# FAY DILLON NICKS v. EDWARD BAILEY NICKS.
## —369 S. W. (2d) 909.

Middle Section. July 27, 1962.

Certiorari Denied by Supreme Court May 10, 1963.

Denney, Leftwich & Osborn, Nashville, for plaintiff in error.

Jack Norman, Jr., Earl A. McNabb, Nashville, for defendant in error.

SHRIVER, J. This is a divorce suit involving the custody of four minor children and, incidentally, the paternity of the last child born to the complainant.

Fay Dillon Nicks, the appellant here, was complainant below while Edward Bailey Nicks was defendant and cross-complainant below and they will be referred to as they appeared in the Court below.

Complainant, Fay Dillon Nicks, brought suit for divorce in the Fourth Circuit Court of Davidson County on June 20th 1960 charging defendant with such cruel and inhuman treatment as to render cohabitation unsafe and improper and also charging him with failure and refusal to provide. She sought the custody of the three minor children of the parties Edward Bailey Nicks, Jr., age six years, John Edgar Nicks, age three and one half years, and Fred Clayton Nicks, age twenty months.

In the course of this protracted litigation a fourth child Herschell Dillon Nicks, was born to complainant on March 13, 1961 and defendant denies that he is the father of this child. In this connection, the Court ordered a blood test for the purpose of determining whether or not the defendant might be the father of said child and this test and the results thereof raise an issue to be determined here.

The defendant, Edward Bailey Nicks, filed an answer and cross-bill charging that complainant was guilty of such cruel and inhuman treatment or conduct toward him as rendered cohabitation unsafe and improper and made other charges with respect to the conduct of the complainant below to support an averment that she was unfit to have the custody and control of the three minor children then born to this union.

The paternal as well as the maternal grandparents of the children also entered the case and there has been built up a voluminous record dealing with the bickering, disputes, charges and counter charges of the parties.

In an opinion and final decree the Trial Judge sustained the charges of the cross-bill and granted cross-complainant, Edward Bailey Nicks, a divorce on the ground of cruel and inhuman treatment and awarded him the custody of the three children whose paternity was not in dispute but held that cross-complainant had no responsibility for the maintenance and support of the youngest child, Herschell Dillon Nicks, and awarded the custody of that child to complainant Fay Dillon Nicks.

From this decree complainant has appealed and has assigned errors.

## II

### Assignments of Error

There are three assignments.

The first assignment is to the effect that the Trial Judge erred in considering a blood test report respecting whether the defendant father could be excluded as the parent of the fourth child of the parties.

The second assignment charges error in finding and holding that the fourth child born to the complainant during coverture is not the legal responsibility of defendant insofar as support and maintenance is concerned.

The third assignment asserts that preponderance of the evidence is against the finding that it is in the best interest of the three older children that their custody be given the father.

## III

The Bill of Exceptions consists of six hundred forty-seven pages of testimony and is too voluminous to even be summarized in this opinion. The memorandum opinion and the decree of the Trial Judge do not set out the facts upon which they are based but recite only the ultimate conclusions reached by the Court. It was held that the original complainant failed to prove grounds for an absolute divorce from defendant and, therefore, her cause was dismissed; that the cross-complainant did sufficiently prove his cause of action on the statutory ground of cruel and inhuman treatment, and therefore, should be granted an absolute divorce from the cross-defendant. It was further recited in the opinion and decree as follows:

"Further, it appears that it will be to the best interest and welfare of the three minor children, Edward

Bailey Nicks, Jr., John Edgar Nicks and Fred Clayton Nicks, that their custody and control be awarded the cross complainant herein. Further that their domicile shall be with the paternal grandparents until further orders of the Court.

"Further, that the original complainant shall have adequate rights of visitation with said children and, in the event these rights cannot be worked out amicably by and between the parties, then they may be adjudicated upon proper motion.

"Further, it is specifically found by the Court that, inofar as the fourth child, born to the principals herein during their coverture, it is not the legal responsibility of the cross complainant herein insofar as support and maintenance is concerned. Further, that the custody of the said fourth minor child shall be awarded the cross defendant herein."

There are two charges which might be said to go to the moral fitness of the complainant to have the custody of her children. It was alleged in the cross-bill that some four or five years before the final separation complainant and one ——— Tidwell came to cross-complainant and told him that they were in love and wanted to marry and asked his consent to a divorce. Complainant insisted in her answer and in her testimony that this charge had been made up out of the whole cloth; that Tidwell was known to her only as a friend of her husband and that when the husband insinuated to her that he was suspicious of Tidwell and jealous of her attentions to him that she immediately notified Tidwell of this attitude and that he had called upon her husband to discuss the nature of defendant's beliefs and that, thereafter Tidwell had

carefully refrained from having anything to do with either of the parties.

Tidwell was called as a rebuttal witness and fully corroborated cross-defendant in this matter.

The other charge and testimony reflecting upon complainant's fitness as a custodian of the children was with respect to her association with one ———— Cordova who was employed at a beauty shop where the complainant worked for a time.

The cross-bill charged cross-defendant with improper relations with Cordova and sought to show that he was probably the father of her child born in March 1961 whose paternity is denied by defendant and cross-complainant.

Complainant strenuously denied any misconduct with Cordova or any other man and in her answer to the cross-bill and her testimony on this subject gave detailed accounts of the times that she had been with Cordova making out a rather strong defense in regard to this matter.

Robert Dalton was called as a witness on behalf of the cross-complainant, Edward Bailey Nicks, and testified that he had been out at night in company with Mrs. Nicks and Cordova. He said that this had happened two or three times when they had gone out for dinner and afterwards to a night club where the group had a few drinks and would stay sometimes for two or three hours. While he did not see Cordova and Mrs. Nicks alone together at any time, he did state that Cordova would leave on these occasions in his own car and that Mrs. Nicks would leave with a friend Mrs. Star, and this, coupled with the testimony of the cross-complainant, made it appear that Mrs.

Nicks had, in fact, kept company with Cordova in circumstances that were calculated to arouse suspicion of misconduct on their part.

The evidence, generally indicates that Mr. Nicks is a reliable man who is a suitable custodian of his children.

■ On the whole, the testimony with respect to the care and custody of the children and the fitness of the parties to have their custody is so involved and so filled with disputes and acrimony that this Court feels that the presumption of the correctness of trial judge's conclusions is especially applicable here. He is widely experienced in these matters and he saw and heard the witnesses and the parties and was in a better position to judge of the weight to be given their testimony than is this Court.

It, therefore, results that, as to the divorce decree and the award of the custody of the children, the assignments of error are overruled and the judgment of the Trial Court, in these respects, will be affirmed.

■ However, there is another question raised by the assignments that has to do with the order for the taking of a blood test and the results reached by reason of that test.

Leading up to this order of the Court requiring the parties to submit to a blood test, it will be seen from the record that the complainant insisted in her pleadings and proof that, after the separation of the parties there was a reconciliation and that she and her husband entered into marital relations after the reconciliation which continued into August 1960. The child in question was born March 13, 1961.

Her description of this reconciliation is that it occurred a few days after the initial hearing respecting custody of the children when the parties agreed to move back into the same house but agreed to occupy separate sleeping quarters; that, after this was done, they did live in separate rooms for about three days and nights and then early one morning complainant was awakened by the defendant who came into her bed-room and thereupon their marital relation were resumed; and that this resulted in her pregnancy and the eventual birth of the fourth child.

The defendant's answer and his testimony admitted the reconciliation and their living in the same house together during this period but denied that there were any sexual relations between the parties during this time.

As the result of these charges and the evidence with respect to them, the Court entered an order on February 23, 1961, in which it was decreed that the two parties and the "minor child just born" would be required to submit to a blood test to determine whether or not the defendant could be excluded as the father of said child.

On motion subsequently made to set the order aside on the ground that the Court did not have the authority to order blood tests after the proof of both parties had been concluded, and, further, that the order was premature, this decree was set aside. In the meantime, however, after the child was born and in the early weeks or months of its life the parties did submit to a blood test under the Court's orders wherein one Mr. Wiley Hugh Moore, Director of the Blood Bank at Vanderbilt University Hospital, made the test in question. As the result of the test made by Mr. Moore, who is not a medical

doctor, he reported that the defendant, Edward Bailey Nicks, was excluded as the father of the said child.

Subsequently, the deposition of Dr. Edward Demombreun was taken and it is disclosed therein that Dr. Demombreun is a pathologist and director of the laboratory work at the Nashville General Hospital, and that his work has been confined to pathology and teaching and research work in that field for some time. He stated that the processing of blood and grouping of same was in the field of pathology and that the matching of blood is done by him and under his supervision.

Dr. Demombreun stated definitely that, in his opinion, Mr. Wiley Hugh Moore was not qualified to make the test in question and to give an opinion with respect to same. He went into some detail as to the great number of factors to be considered and the very meticulous care necessary in order to arrive at a safe conclusion with respect to blood grouping tests in disputed paternity procedures, and further stated that there are only a few men in the United States who are actually qualified to make such a test and give such an opinion on which a Court could rely with confidence.

He also testified that, in his opinion, no such blood grouping test would afford an accurate answer to the question of paternity if taken before the child was at least six months old since certain blood factors change during the early life of an infant.

Thereafter, the trial Judge set aside his previous order and, apparently, being convinced that he ought not to rely on the report that had been given him to adjudicate the question of the paternity of the child. On August 17, 1961 he entered an order in which it was recited;

"It is, therefore, ordered, adjudged, and decreed by the Court that the order of this Court, dated August 8, 1961, be and hereby is vacated and set aside; and grounds Nos. 1, 4 and 5 of complainant's motion are overruled.

"It is further ordered by the Court that Dr. Alexander S. Wiener, 64 Rutland Road, Brooklyn 25, New York, be and hereby is selected to perform blood grouping tests on the parties hereto and said last born minor child.

"It is further ordered by the Court that the parties hereto and said minor child will present themselves to Dr. Robert Shacklett at his offices in the Nashville General Hospital on September 20, 1961, at 9:00 o'clock A.M., for the purpose of having the necessary blood samples drawn by said Dr. Shacklett for the purpose herein described, and these blood samples will then forthwith be packaged and transmitted by Dr. Shacklett to Dr. Wiener in accordance with instructions given by him.

"Dr. Wiener will direct and supervise these blood tests in their entirety and will summit his final report in duplicate, one copy to Mr. Jack Norman, Jr. solicitor for defendant and cross-complainant, at 213 Third Avenue North, Nashville, Tennessee, and another copy to Mr. Neill S. Brown, solicitor for complainant and cross-defendant, at 426 Third National Bank Building, Nashville, Tennessee.

"It is further ordered that the defendant and cross-complainant will pay the costs of the said blood tests."

It is pointed out in the brief and assignments of error of the complainant, appellant, that the blood test report of Dr. Wiener was not offered in evidence by the appellant or the appellee, was not presented by the person preparing the report as a witness by deposition or otherwise, was not offered under oath or otherwise identified and was so irregularly handled as to actually be left not a part of the record in this cause or available to the appellant or her solicitors on this appeal whereby even the contents of the report might be determined.

It is further argued that the action of the Trial Judge in considering the matter not regularly presented to him and after the trial had been concluded and the cause taken under advisement for decision, is prejudicial to the complainant in that it deprives her of the right of review in this Court and in violation of her constitutional rights.

In this connection it is interesting to observe the statute under which this blood test was ordered by the Trial Court.

Under *Chapter 7, entitled "Admissibility of evidence"* we find *Section 24-716 T.C.A., "Blood grouping tests to disprove paternity"*. This section provides that in any civil or criminal action in any court in which the question of the paternity of a child is involved, the court before whom the matter is pending, on motion of the person charged with being the father of the child, shall order that the alleged father, the mother and the child submit to such blood grouping tests as may be necessary—to determine whether or not the defendant can be excluded as the father of the child  The Statute then provides as follows:

"Such tests shall be made by qualified persons in laboratories located in this state, designated by the judge

of the court in which such proceeding is pending. The results of such tests shall be admissible in evidence only in cases where exclusion is established.''

█ It is to be observed that such tests to be made by qualified persons in laboratories located in this state are admissible in evidence. This is not to say that such tests shall be received without an opportunity afforded the parties involved to examine the witness who made the tests as to his competency and as to the means employed by him, and all other factors having to do with the reliability of such tests.

This was not done in the case before us nor was the provision of the statute with respect to the tests being made by qualified persons in laboratories located in this State observed in this instance, and such tests were made before the child was six months old.

Under all these circumstances, we think that the conclusion of the Trial Judge with respect to the paternity of the fourth child, which is evident from his finding to the effect that defendant Edward Bailey Nicks has ''No legal responsibility'' insofar as the support and maintenance of this child is concerned, is not properly supported by the record. Therefore, this part of the opinion and decree is reversed and set aside.

In all other respects the opinion and decree of the Court is affirmed.

The cause is remanded to the trial Court for such other and further proceedings as may be found necessary and proper in the premises.

Modified, affirmed and remanded.

Humphreys and Chattin, JJ., concur.