Bobby B. OVERALL, Appellant,

v.

SOUTHERN SUBARU STAR, INC., and the Travelers Insurance Co., Appellees.

Supreme Court of Tennessee.

Dec. 6, 1976.

A. L. Pressgrove, Jr., Southaven, Miss., for appellant.

John H. Harris, Jr., Manire, Harris, Shelton & Dunlap, Memphis, for appellees.

## OPINION

HENRY, Justice.

This is a workmen's compensation case in which two issues are presented for our determination: (1) whether the trial court erred in admitting into evidence the results of a blood alcohol test which showed the deceased's blood to contain 0.172 per cent alcohol, and (2) whether there is material evidence to support the trial court's finding

that the decedent's death was proximately caused by his intoxication?

## I.

The deceased, Jerome Overall, was employed by appellee Southern Subaru Star, Inc. as a maintenance representative. In the course of his employment he regularly visited various Subaru dealerships throughout Mississippi and Louisiana.

On 3 December 1973 the deceased left Memphis to deliver a demonstrator automobile to a dealer in Shreveport, Louisiana. At approximately 5:40 p. m. on this same date he was involved in a two-vehicle accident on U. S. Highway 165 just south of Bonita, Louisiana, which resulted in his death.

The accident occurred when the deceased, who was proceeding in a southward direction along U. S. Highway 165, apparently veered across the northbound lane of the highway and onto the lefthand or east shoulder. The deceased's car travelled approximately 165 feet in a southbound direction along this left shoulder, and then re-entered the highway cutting across the path of a pickup truck being driven in the opposite direction along the highway. The driver of the pickup truck had previously swerved into the southbound lane but was unable to avoid a collision as the deceased's vehicle cut back across the highway in front of him.

It had been raining in the vicinity of the accident off and on all day. The actual condition of the highway at the accident scene was a disputed issue. There was testimony that the highway was "rutted" in places, allowing water to collect into puddles and the road surface to become slippery. However, the investigating officer at the accident scene testified by deposition that there were "no defects" or obstructions in the road at the point where the accident occurred.

Approximately forty minutes prior to the accident the deceased was observed entering a beer tavern in Bonita. Although there was no testimony as to what he did while inside the tavern, he was observed leaving ten minutes later carrying a package in his hand. At this time the deceased did not appear to be intoxicated. Several cans of beer were found inside his car following the collision, and a blood sample taken from his body shortly after the accident indicated that his blood contained 0.172 per cent alcohol.

The trial court found that "the deceased was intoxicated at the time of the accident; that such intoxication proximately caused the accident; and that since the death of the deceased was due to intoxication, the petitioner [was] not entitled to recover any workmen's compensation benefits in view of the provisions of TCA 50–910."

## II.

■ The trial court admitted into evidence a laboratory report which indicated that the deceased employee's blood alcohol reading was 0.172 per cent. This report was also verified by the deposition testimony of Dr. N. Klam, a pathologist associated with the Monroe Laboratories, Inc., in Louisiana, where the blood alcohol test was performed. During the deposition Dr. Klam was asked who actually made the blood test and he responded that "Mr. McBride, was the technologist on this alcohol determination." The actual blood alcohol report contains the signatures of both Mr. McBride and Dr. Klam.

Introduction of the laboratory blood test report, as well as this portion of Dr. Klam's testimony, was objected to by appellant as constituting inadmissible hearsay. The basis for these objections was that such evidence did not constitute the "best evidence", since the record did not indicate that Dr. Klam conducted the actual blood test himself.

Appellant relies upon *Nicks v. Nicks*, 51 Tenn.App. 520, 369 S.W.2d 909 (1962), as authority for the proposition that persons who conduct blood tests should be made witnesses for the purpose of examining their competency, as well as the means employed in performing such tests. *Nicks* involved a child custody suit in which the

question of paternity was in dispute. The Court of Appeals held that blood grouping tests to disprove paternity made pursuant to Section 24–716, T.C.A., had been improperly admitted into evidence. In dictum, the Court reasoned that although such blood test results were generally admissible,

> an opportunity must be afforded the parties involved to examine the witness who made the tests as to his competency and as to the means employed by him, and all other factors having to do with the reliability of such tests. (Emphasis supplied). 369 S.W.2d at 914.

Appellant has placed reliance upon the emphasized language quoted *supra*. It should be noted, however, that the *Nicks* Court made no mention of the Uniform Business Records as Evidence Act,[1] nor the applicability of such an enactment to the circumstances of that case. Professor Paine, in his treatise on the Tennessee Law of Evidence at Section 79, footnote 6 (1974), indicates that such dictum as suggested in *Nicks* is "ill-advised and would nullify the Uniform Act."

The pertinent section of the Uniform Act, Section 24–714, T.C.A., provides that:

> [a] record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian *or other qualified witness* testifies to its identity and mode of preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission. (Emphasis supplied).

In the instant case the blood alcohol test report was actually prepared and submitted by Dr. Klam, the testifying witness. In addition, his deposition testimony indicates that he was thoroughly familiar with the details of the actual test performed on the deceased's blood sample, and that such test was conducted in the regular course of business by persons under a business duty to render accurate information. Under these circumstances, we hold that the deceased's blood alcohol test report was properly admitted into evidence by the trial court.

### III.

In considering any assignment directed to the sufficiency of the evidence on appeal in a workmen's compensation case, it must be emphasized that this Court does not reweigh the evidence. Instead, our function is merely to determine if there is material evidence to support the trial court's findings of fact. *American Ins. Co. v. Ison*, 538 S.W.2d 382 (Tenn.1976); *Wooten Transports, Inc. v. Hunter*, 535 S.W.2d 858 (Tenn. 1976); *Strader v. United Family Life*, 218 Tenn. 411, 403 S.W.2d 765 (1966).

The appellees in the instant case rely upon Section 50–910, T.C.A. in raising the defense of intoxication. This section provides that:

> No compensation shall be allowed for an injury or death due to the employee's willful misconduct or intentional self-inflicted injury, or *due to intoxication*, or willful failure or refusal to use a safety appliance or perform a duty required by law. If the employer defends on the ground that the injury arose in any or all of the above stated ways, *the burden of proof shall be on the employer to establish such defense.* (Emphasis supplied).

Under this statute the burden of proving that the employee's injury or death was "due to intoxication", and therefore not compensable, rests solely upon the employer. *Gentry v. The Lilly Co.*, 225 Tenn. 708, 476 S.W.2d 252 (1971).

In the present case, the evidentiary question concerns whether the employee's death was "due to intoxication". Professor Larson, in Volume 1A of his treatise on Workmen's Compensation Law, at section 34.33, discusses the meaning of this statutory phrase and concludes with the following apt language:

---

1. Sections 24–712 et seq., T.C.A. (originally enacted in 1957).

When a statute says merely "caused by" or "due to", *this can refer neither to remote cause nor to sole cause. It must mean proximate cause.* (Emphasis supplied).

Larson characterizes such "proximate cause" as "something resembling ordinary legal causation." *Ibid.* Other commentators have characterized the Tennessee version of this statute in a similar manner. See Schneider's Workmen's Compensation, Perm. ed., vol. 6, § 1586.

■ We, therefore, hold that in order to successfully invoke Section 50–910, T.C.A. as a defense to a work-related injury or death "due to" the employee's intoxication, the employer has the burden of establishing proximate cause. This does not, however, mean that the employer may establish such a defense where the employee's intoxication was merely a remote or contributing cause. Neither does it require the employer to prove that the employee's intoxication was the sole cause, as some Tennessee commentators have suggested.[2]

■ The trial court in the instant case found that the deceased employee's intoxication *proximately caused* his death. Under the circumstances of this case, there was material evidence from which the court might have found that the deceased's death was proximately caused by either his own intoxication, or by the deceased's loss of control of his car as a result of slippery highway conditions. Under these circumstances we will not disturb the trial court's findings of fact. *Wooten Transports, Inc. v. Hunter,* 535 S.W.2d 858 (Tenn.1976).

The judgment of the trial court is hereby Affirmed.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.

---

2. *See, e. g.,* Stone and Williams, Tennessee Workmen's Compensation, § 37 (1957).