**Ronnie L. ARDEN, Plaintiff–Appellant,**

v.

**HUTCH MANUFACTURING COMPANY, Defendant–Appellee.**

Supreme Court of Tennessee, at Knoxville.

May 15, 1989.

Jess D. Campbell, Knoxville, for plaintiff-appellant.

Arthur G. Seymour, Jr., Robert L. Kahn, Frantz, McConnell & Seymour, Knoxville, for defendant-appellee.

OPINION

DROWOTA, Chief Justice.

In this worker's compensation case Plaintiff Ronnie Arden appeals from the denial of benefits for a permanent mental disability relating to his work as an over-the-road truck driver. The trial court found that Plaintiff suffered from "acute psychosis produced by amphetamines," and that he had not established "an accidental injury arising out of and in the course of his employment."

When employed by Defendant in 1985, Plaintiff had been regularly employed as a long haul driver for 14 years. Defendant Hutch Manufacturing Company is primarily a maker of building materials and operates its own trucking division as a private carrier.

It is not disputed that Plaintiff departed from Defendant's plant in Loudon on a Saturday evening in August 1986 and arrived in Tuscon, Arizona the following Monday—a trip of approximately 1800 miles and 40 hours. During the trip Plaintiff did not rest, and he ingested a quantity of over-the-counter diet pills containing amphetamines along with a great deal of coffee. While unloading freight in the 100–degree heat in Tuscon, he collapsed and received emergency attention from paramedics. Plaintiff refused hospitalization, but notified his employer, who sent a relief driver to complete the schedule and to bring him home.

Upon his return Plaintiff immediately sought treatment at Park West Hospital in Knoxville. He exhibited extreme nervous-

ness, bizarre behavior, elevated blood pressure, and rapid pulse. Dr. Jerome McKenzie, a specialist in internal medicine initially diagnosed his condition as "acute psychosis" associated with the aftereffects of an overdose of amphetamines. After a brief hospitalization Plaintiff's symptoms were alleviated, but on his doctor's advice did not return to work. Two months later his condition had worsened.

In October Plaintiff was again hospitalized and a drug screen showed the unexplained presence of amphetamines. His behavior had become very aggressive, and he could not sleep. Ultimately, Dr. McKenzie concluded the psychosis was "chronic." He explained that in most cases the "acute" condition would subside with rest and restoration of fluids, after the patient's body had been cleared of drugs, but in a few cases the psychotic behavior would persist. In his opinion, Plaintiff's persistent symptoms were permanent, and he was totally disabled from driving a truck.

The circumstances surrounding the trip to Arizona are sharply disputed. Plaintiff insists he was given deadlines that required him to drive approximately 40 hours without sleep. Defendant's witnesses deny this, and a company officer testified that Plaintiff was told twice on the departure day that he was mistaken and that he had one week to complete the round trip. The trial court did not resolve this conflict, but other circumstances in the record corroborate Defendant's position.[1] There is no allegation that Defendant, or for that matter any former employer, had required trips beyond reasonable, physical limits on other occasions. Certainly the evidence does not preponderate in favor of the claim that the employer imposed a schedule that necessarily required Plaintiff to use stimulants.

Plaintiff candidly admits that the circumstances of his case do not easily fit any of the formulated rules. Clearly the sole medical cause of the claimed disability is the Plaintiff's use or overdose of amphetamines. The trial court found the "collapse" that occurred in Tuscon also resulted from the overdose. There is nothing to suggest it had any causal relationship to the mental disorder; nor is there any claim for additional injury or disability resulting from the physical collapse.

The issue is not, then, whether the amphetamine use was or was not a natural consequence flowing from an admittedly compensable injury. *Compare Wheeler v. Glens Falls Insurance Company*, 513 S.W.2d 179 (Tenn.1974) *with Guill v. Aetna Life & Casualty Company*, 660 S.W.2d 42 (Tenn.1983). Nor is the issue the extent to which an employee's "intoxication" contributed to an on-the-job accident. *Compare Overall v. Southern Subaru Star, Inc.*, 545 S.W.2d 1 (Tenn.1976) *with Gentry v. Lilly Company*, 225 Tenn. 708, 476 S.W.2d 252 (1971).[2]

■ As we understand the factual findings of the trial court, Plaintiff's psychosis is caused by his continual and long-term use of amphetamines and the physical collapse resulted from an overdose during the trip to Arizona. These findings are reviewed with a presumption of correctness, unless the evidence preponderates to the contrary. T.C.A. 50–6–225(e) (Supp.1988). Ordinarily, causation is a matter of proof by expert medical opinion, and in this case that expert opinion supports the findings.

■ The legal question is whether Plaintiff's ingestion of amphetamines is attributable to his employment; that is, whether it

---

1. Most of Defendant's deliveries entailed much shorter trips along the eastern seaboard. Typically, a driver made two such trips in one week. Customarily, the driver would receive instructions at the end of the week and was expected to arrive at the first scheduled stop on Monday morning. Deliveries to the west were rare, and permitted only one trip per week. The trip at issue in this case was Plaintiff's first assignment to a western state.

2. Additionally, the record is inadequate for consideration of willful misconduct on Plaintiff's part or of "illegal" operations on Defendant's part. No regulations of any sort were placed in the record. *See generally Wright v. Gunther Nash Mining Construction Company*, 614 S.W.2d 796, 798 (Tenn.1981).

arose out of and in the course of his employment.

Viewed in the most liberal light, Plaintiff has suffered a severe and unusual reaction to a substance he ingested to enhance his work performance. This substance was not found in the workplace; it was not supplied by the employer; the record does not show that its use was explicitly or implicitly required by his employment; and it was consumed outside the course of his employment as well as during his working hours. Under these circumstances we cannot find "a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Henley v. Roadway Express,* 699 S.W.2d 150, 155 (Tenn.1985) quoting *T.J. Moss Tie Co. v. Rollins,* 191 Tenn. 577, 581, 235 S.W.2d 585, 586 (1951). Plaintiff has failed to rebut the presumption of correctness that attached to the trial court's judgment. Accordingly, the judgment of the trial court is affirmed. Costs are taxed to the Appellant.

COOPER, HARBISON and O'BRIEN, JJ., and McLEMORE, Special Justice, concur.