# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

BEVERLY FAY MELTON,   )
          )
  Plaintiff/Appellee,   ) Weakley Chancery No. 14238
          )
VS.          ) Appeal No. 02A01-9701-CH-00022
          )
DANNY JOE MELTON,    )
          )
  Defendant/Appellant.   )

FILED

July 2, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

### APPEAL FROM THE CHANCERY COURT OF WEAKLEY COUNTY
### AT DRESDEN, TENNESSEE
### THE HONORABLE W. MICHAEL MALOAN, JUDGE

**WILLIAM R. NEESE**
Dresden, Tennessee
Attorney for Appellant

**JAMES H. BRADBERRY**
**JAMES H. BRADBERRY & ASSOCIATES**
Dresden, Tennessee
Attorney for Appellee

**AFFIRMED**

             **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**
  In this divorce action, Danny Joe Melton (hereinafter, "Husband" or "Mr. Melton")

appeals the trial court's determination regarding the division of the marital estate, custody of the parties' minor child, and the award of certain farm equipment to his former father-in-law.

Danny Joe Melton and Beverly Fay Melton (hereinafter, "Wife" or "Mrs. Melton") were married in June, 1972. During the marriage, the couple lived in Gleason, Tennessee. The union produced two children. The older child has reached the age of majority, and the younger, born in 1981, is a minor. Mrs. Melton is a teacher in the Weakley County school system, and Mr. Melton derived most of his income during the marriage from farming and from auto racing-related businesses. Throughout the marriage, Vernon Dunn, Mrs. Melton's father, contributed financially to the Meltons. In fact, Dunn set up Mr. Melton in a farming operation by giving him 111 acres of farm land and a tractor, and Mr. Melton helped Dunn farm his own land and also participated with him in a number of ventures. It is undisputed that financial woes plagued the Meltons during their marriage, and even resulted in the couple's seeking bankruptcy protection in 1987.

Mr. Melton became involved in the auto racing business and eventually bought an $18,000 racing car and a $15,000 motor. In 1995, rumors surfaced around the community that Mr. Melton was involved in an extramarital affair. Ultimately, the Meltons separated in August, 1995. Mrs. Melton filed a complaint for divorce in the Weakley County Chancery Court in September 1995, charging Mr. Melton with adultery and inappropriate marital conduct. Subsequently, Mr. Melton filed an answer and counter complaint. On April 3, 1996, Vernon Dunn filed an intervening petition against the Meltons in which he sought an order requiring the Meltons to vacate all properties owned by Dunn, to return all equipment owned by Dunn as well as seeking a judgment for all monies and benefits that Dunn had provided to the couple since 1985.

Following a trial held on April 26, 1996, and June 28, 1996, the trial court entered orders on July 12, 1996, August 2, 1996, and August 26, 1996. In its ruling, the trial court granted a divorce to Mrs. Melton on the grounds of inappropriate marital conduct but found

2

that there had been no proof of an extramarital affair. The trial court awarded the parties joint custody of the minor child, with the mother having custody during the school year, and the father having custody during the summer months. The trial court granted each parent liberal visitation during the non-custodial period. Additionally, both parents were ordered to pay child support to the other during the non-custodial period. The trial court awarded all real property to Mrs. Melton and divided the personal property between the parties. Mr. Melton was ordered to vacate the shop building adjacent to the house that he used for his racing business, and the court ordered Mrs. Melton to pay Mr. Melton $20,000 as costs of relocating his racing business. The trial court awarded Vernon Dunn possession of a John Deere 4440 tractor, combine, planter and bush hog, but dismissed Dunn's other claims. The trial court directed that Mr. Melton and Mrs. Melton were each responsible for the debts following the property received by each. Mr. Melton timely filed a notice of appeal on September 10, 1996, and the cause is properly before this Court for consideration.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Rule 13 (d) T.R.A.P.

## ISSUES

Mr. Melton has raised the following issues on appeal:

I. Did the trial court make an equitable division of the parties' marital property in awarding the wife approximately seventy percent of its value?

II. Did the trial court err in effectively naming the wife as primary custodial parent?

III. Did the trial court err in awarding Vernon Dunn the tractor and planter?

## PROPERTY DIVISION

3

On appeal, Mr. Melton asserts that the trial court erred in making a property division. We find that this issue is without merit.

Trial courts have broad discretion in dividing the marital estate upon divorce. Kincaid v. Kincaid, 912 S.W.2d 140, 142 (Tenn. App. 1995). In Batson v. Batson, 769 S.W.2d 849 (Tenn. App. 1988), this Court addressed the equitable division of marital property:

> Tenn. Code Ann. § 36-4-121(a) provides that marital property should be divided equitably without regard to fault. It gives a trial court wide discretion in adjusting and adjudicating the parties' rights and interests in all jointly owned property. Fisher v. Fisher, 648 S.W.2d 244 (Tenn. 1983).

This Court customarily gives great weight to decisions of the trial court in dividing marital estates, and we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results from some error of law or misapplication of statutory requirements and procedures. Wade v. Wade, 797 S.W.2d 559, 604 (Tenn. App. 1990). The trial court's distribution need not be equal to be equitable. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of each case. Batson v. Batson, 769 S.W.2d 849, 859 (Tenn. App. 1988).

Upon review of the facts of this case, it appears to the Court that the division of marital property was equitable. Each party has presented their own figures regarding the valuation of the marital estate to support their respective positions, and it is not surprising that there is a great disparity between them. The Chancellor decreed that the debts followed the property to which they were attached. For purposes of this analysis, we will accept the Husband's valuation and distribution schedule. See Carrier v. Carrier, No. 02A01-9608-CH-00180 (Tenn. App. May 2, 1997). With this in mind, we conclude that the trial court divided the marital property as follows:

|        | **Wife** |        | **Husband** |
|--------|----------|--------|-------------|
| **Asset** | **Value** | **Asset** | **Value** |
| 50 acre farm & home | $149,000.00 | Farm Equip. less award |  |

4

| | | | |
|---|---|---|---|
| 67 acre farm | 71,000.00 | to Mr. Dunn | $ 3,850.00 |
| 14 acre farm | 13,852.00 | Bus. parts & equip. | 44,255.00 |
| **Total Real Estate** | 233,852.00 | 1969 truck, 1984 truck & | |
| | | Polaris 4-wheeler | 9,000.00 |
| Home furnishings | $ 8,585.00 | 1994 Chevrolet truck | 18,000.00 |
| Lawn Mowers | 1,000.00 | Firearms & misc. | 1,000.00 |
| 1990 Chevrolet Lumina | 5,450.00 | Cash awarded in decree | 20,000.00 |
| Wife's pension | 27,345.78 | | |
| Cash on hand | 2,500.00 | | |
| **Total Personal Property** | $ 44,880.78 | | $96,105.00 |
| Real Estate Debt | ($76,333.00) | | |
| Auto Debt | ($12,800.00) | | ($14,000.00) |
| | | | |
| **TOTAL ASSETS** | $278,732.78 | | $96,105.00 |
| **TOTAL DEBT** | (89,133.00) | | (14,000.00) |
| **CASH TO HUSBAND** | (20,000.00) | | |
| **NET DISTRIBUTION** | 169,599.78 | | 82,105.00 |

Mr. Melton asserts that the property division was inherently inequitable because the court awarded Mrs. Melton assets valued at nearly two times that awarded to him. However, Mr. Melton fails to recognize that Mrs. Melton has been saddled with debt obligations equal to nearly six and one-half times the debt that was assessed to him, and he had not credited her with the $20,000.00 cash payment that the trial court ordered her to make to him. Furthermore, Mr. Melton has overlooked the fact that he has received a windfall by being relieved of further liability for approximately 87% of the marital debts. In fact, he was responsible for creating approximately $14,000.00 in debt secured by the 14 acre farm in order to enter the racing business by purchasing a car. Mr. Melton subsequently sold the racing car for a loss, purchased another and sold the second, also for a loss. Other than his testimony, no evidence was presented regarding the disposition of the proceeds of these sales, though it is clear that the proceeds were not applied to the reduction of the original debt. In effect, Mrs. Melton must pay for her husband's entry into the racing business. This is not a new scenario. Throughout the marriage, Mrs. Melton held a full time teaching position and even taught on nights and weekends. It is evident that Mrs. Melton contributed substantially more to the financial aspect of the marriage than did Mr. Melton, whose losing business ventures resulted in dissipation of the marital estate and ultimately bankruptcy in spite of contributions by Vernon Dunn, gifts of free land, and soil bank payments. The wife is land rich, but cash poor with only minuscule liquid assets with which to pay the $89,000.00 in debt on her annual teacher's salary of some

5

$29,000.00. Accordingly, we find that the property division did not result in an inequitable distribution to Mr. Melton.

From our review of the record and giving the Husband the benefit of his proffered evidence, we find that the evidence does not preponderate against the trial court's findings as to the division of the property. Accordingly, the trial court's determinations regarding property division will not be disturbed on appeal.

Mr. Melton next challenges the trial court's determination regarding custody of the parties' minor child. The trial court awarded the parties joint custody of their 14 year-old son. Specifically, the court granted custody of the child to Mrs. Melton during the school year and to Mr. Melton during the summer months. The trial court also awarded liberal visitation to the non-custodial parent. On appeal, husband asserts that the trial court awarded the wife custody for 42 weeks per year and to him for a mere 10 weeks per year. Further, husband asserts that the trial court disregarded the expressed desire of the minor son regarding his living arrangements.

In order to make a determination concerning the custody of children, the trial court must look to the particular facts of each case. Scarbrough v. Scarbrough, 752 S.W.2d 94, 96 (Tenn. App. 1988). Factors to consider include, but are not limited to the following:

> Age, habits, mental and emotional makeup of the child and those parties competing for custody; Education and experience of those seeking to raise the child; Their character and propensities as evidenced by their past conduct; The financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; The availability and extent of third party support; The associations and influences to which the child is most likely to be exposed and the alternatives afforded, both positive and negative; and where is the likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern and physical and spiritual nurture.

Bah v. Bah, 668 S.W.2d 663, 666 (Tenn. App. 1983).

During the course of these proceedings, the trial court had an opportunity to observe personalities, responsibilities, demeanor, credibility and suitability of each parent to serve

6

as the custodial parent.  While the child expressed a desire to live with his father, he also stated to the trial court during an *in camera* examination:

> Q: Okay. Well, since your mom and dad separated, I believe back in August or September of last year, tell me where you have been living during that period of time?
>
> A: My mom's.
>
> Q: Okay, How has that been working out?
>
> A: Pretty good.

This Court is of the opinion that the findings of the trial court should be given great weight as they relate to issues surrounding child custody.  "Absent some compelling reason otherwise, considerable weight must be given to the judgment of a Trial Court in a divorce proceeding in respect to credibility and suitability" of the parties as custodians.  Bush v. Bush, 684 S.W.2d 89, 95 (Tenn. App. 1984).  The trial courts are vested with a wide discretion in matters of child custody, and the reviewing courts will not interfere except upon a showing of erroneous exercise of that discretion.  Grant v. Grant, 286 S.W.2d 349, 350 (Tenn. 1954).  The trial court enjoys a substantial advantage in having the opportunity to see, hear and evaluate the parents' suitability as custodians.  Mimms v. Mimms, 780 S.W.2d 739, 745 (Tenn. App. 1989).  As this Court noted in Bah v. Bah, 668 S.W.2d 663:

> This Court will, however, give great weight to the decision of the trial court because the judge saw the witnesses face-to-face and heard them testify; this rule being based upon the assumption that the trial judge did not act arbitrarily or willfully but with the regard to what is right and equitable, considering first the child's best interest as directed by his reason and conscience towards the child's welfare.

Id. at 665, citing, Riddick v. Riddick, 497 S.W.2d 740 (Tenn. App. 1973).

The true test for the award of custody is to arrive at the point of deciding with whom to place the child in preparation for a caring and productive adult life.  Bah at 665-66.  It is noted by this Court in Koch v. Koch, 874 S.W.2d 571, 575 (Tenn. App. 1993), that the welfare and best interest of the child is of paramount concern in custody cases.  See also, Mollish v. Mollish, 494 S.W.2d 145, 151 (Tenn. App. 1972).  Fitness for custodial responsibilities is a comparative matter that the trial court is required to make.  See, Bah

7

v. Bah, 668 S.W.2d at 666. Nowhere is the presumption of correctness of the trial court's conclusions more applicable than in matters of child custody where the surrounding testimony is complex and involved and frequently filled with disputes and acrimony. See, Nicks v. Nicks, 369 S.W.2d 909, 912 (Tenn. App. 1962). As noted by the Tennessee Supreme Court in Cecil v. State ex. rel. Cecil, 237 S.W.2d 558, 559 (Tenn. 1951):

> In cases involving child custody, the decision of the Trial Judge who saw and heard the witnesses, is to be given great weight, if not controlling effect, and we will interfere only where we find a palpable abuse of discretion, or a judgment against the great weight of the evidence.

Id. at 559.

Upon examination of the transcript and record in this cause it is apparent that the Chancellor gave great consideration to the comparative fitness of Mr. Melton and Mrs. Melton to serve as custodial parents. The Chancellor concluded that both parents were suitable to serve as custodial parents, and each parent was granted liberal visitation during the non-custodial period. Mrs. Melton is a teacher in the Weakley County school system, and is in the best position to oversee the child and his studies. Similarly, the child's interest in racing is best served by Mr. Melton during the time that he has custody in the summer. The Chancellor's decision in regard child custody is presumed to be correct and should be upheld on appeal because the evidence presented to this Court does not preponderate against the trial court's findings.

**TRACTOR AND PLANTER**

At the conclusion of the proof in this cause, the trial court awarded Vernon Dunn the John Deere 4440 tractor and a planter that had been used by Mr. Melton. On appeal, Mr. Melton asserts that Dunn failed to present adequate proof to support his claims of ownership of the equipment and that Dunn failed to provide Mr. Melton with adequate notice concerning the termination of the land lease arrangement. We find this issue to be

8

without merit.

At the March 1996, hearing, the trial court found that Dunn was the owner of the tractor, but the trial court permitted further evidence on this issue to be presented at trial. At trial, Vernon Dunn presented a 1979 check in the amount of $22,000, which stated in the memo section, "For 4440 John Deere with warranty expiring March, 1979." Mr. Melton maintains that the tractor is his as evidenced by a $10,500.00 check written to Dunn from the proceeds of the sale of Melton's Case tractor that were to be applied toward the purchase of the John Deere tractor in dispute. Conversely, Dunn maintains that the Melton's check was to cover losses sustained by the men in the commodities market. Dunn produced numerous other checks that he had written for repairs and tractor parts. Also, Dunn produced copies of his IRS tax return depreciation schedules for 1979-1986, which all noted a John Deere 4440 tractor.

In addition to the tractor, Dunn asserts ownership over a planter in Melton's possession. Melton asserts that Dunn produced no evidence of his ownership of the planter in question. Dunn admits that he had no documents evidencing his title to that implement. However, Dunn did submit IRS tax return depreciation schedules for 1980-1986 which indicated that a planter was being depreciated. Mr. Melton failed to produce any evidence or documents which indicated that he had any interest in said planter. Accordingly, we do not find that the Chancellor erred in awarding possession of the tractor and planter to Mr. Dunn.

Finally, Mr. Melton asserts that Dunn failed to give him adequate notice of the termination of the farm lease. The common law requires six months' notice prior to the termination of a lease for a tenant holding over from year to year. Buchanan v. Johnson, 595 S.W.2d 827, 831 (Tenn. App. 1979); see also, Smith v. Holt, 193 S.W.2d 100, 102 (Tenn. App. 1945). In the instant case, Mr. Melton presented no proof regarding the terms of the agreement with Vernon Dunn, so it is not known whether Mr. Melton was a contract tenant or a hold-over tenant. Dunn wrote Mr. Melton a letter directing him to cease all

9

operations upon and benefit from Dunn's land as of December 31, 1995, and Mr. Melton testified that he received said letter in September 1995. Such notice would be quite sufficient for a lease beginning in the spring. Upon consideration of the evidence proffered, we find that Dunn gave Melton adequate notice so as to warrant termination of the lease.

For the reasons stated herein, the judgment of the trial court is affirmed. Costs are adjudged against Husband.

_____

HIGHERS, J.

CONCUR:

_____

FARMER, J.

_____

LILLARD, J.

10