### INTERSTATE MECHANICAL CONTRACTORS, INC.

v.

### Billy McINTOSH.

Supreme Court of Tennessee, at Knoxville.

May 2, 2007 Session.

June 29, 2007.

---

Timothy W. Conner, Knoxville, Tennessee, for the appellant, Interstate Mechanical Contractors, Inc.

Gary Dawson, Knoxville, Tennessee, for the appellee, Billy McIntosh.

## OPINION

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ., and E. RILEY ANDERSON, Sp. J., joined.

Before this case was heard by the Special Workers' Compensation Appeals Panel, we granted review to determine whether the trial court correctly applied the statutory presumption, imposed by the Drug–Free Workplace Act, Tennessee Code Annotated section 50–6–110(c)(1) (2005), that the employee's drug use proximately caused his injury. The trial court applied the statutory presumption but found that the employee had successfully rebutted it by a preponderance of the evidence. We hold that the trial court did not err in applying section 50–6–110(c)(1) and affirm the court's judgment awarding partial permanent disability to the employee.

## I. FACTS AND PROCEDURAL HISTORY

On September 8, 2004, Billy McIntosh was injured when his left hand was caught in a power roller machine that bends sheet metal for use in the fabrication of ductwork. McIntosh, who was fifty-one years old at the time of his injury, had worked for Interstate Mechanical Contractors, Inc. ("Interstate") for approximately five years. Interstate is a full mechanical contractor and manufactures and installs heating, ventilation, and air conditioning systems. McIntosh was experienced in this line of work; since leaving high school after the tenth grade, McIntosh had been employed in the heating and air conditioning industry.

McIntosh testified that he was injured while he was demonstrating to a new employee, Nick Walker, how to operate the roller machine. McIntosh was one of three workers responsible for the training of new employees on the equipment. According to McIntosh, he reached over the roller machine from behind to set a piece of sheet metal when Walker engaged the rollers, which immediately grabbed McIntosh's hand and pulled it into the rollers. Walker, who was stunned by McIntosh's screams to "cut it off" as the rollers crushed his hand, was unable to help so that McIntosh was forced to disengage the machine himself and then reverse the rollers to release his hand. Had McIntosh not acted quickly to disengage the rollers, his entire arm would have been crushed between the rollers. As a result of the accident, McIntosh's hand was severely crushed. The extent of the injury required the partial amputation of his middle and index fingers. McIntosh continues to suffer substantial pain and is unable to extend his ring and small fingers, which remain contracted in a flex position. His physician assessed 59% permanent partial impairment to the hand.

Walker confirmed that McIntosh accompanied him to the roller machine. At trial, Walker testified that he was setting up the machine when McIntosh approached the machine from behind. He did not see McIntosh place his hand on the rollers, and he did not see the rollers pull McIn-

tosh's hand into the machine. He only heard the screams.

After the accident, McIntosh was rushed to a hospital for treatment. At the hospital, a drug screen was performed at the insistence of a supervisor who was also present at the hospital.[1] The drug screen revealed that McIntosh had a tetrahydrocannabinol ("THC") level of greater than 900 ng/mL.[2] THC is a marijuana metabolite that is stored in fat cells and can be detected in the body up to thirty days after smoking marijuana.

McIntosh admitted that he had smoked marijuana in the week leading up to and on the night before his injury. He denied smoking any marijuana or being otherwise impaired on the day of the accident.

Dr. Donna Seger, a medical toxicologist, testified in her deposition, to a reasonable degree of medical certainty, that the level of THC in McIntosh's system at the time of the injury would have impaired his reaction time. She based her opinion on the level of THC and McIntosh's testimony that he was not a chronic user of marijuana.

On September 8, 2004, McIntosh reported for work at 7:00 a.m. He did not leave the premises before the accident occurred at 2:30 p.m. Walker and McIntosh ate lunch together and were working together on that day. Walker testified that he had been around people who smoked marijuana and he did not see any evidence of the effects of marijuana on McIntosh. Walker testified that if a person had a hand on the rollers when they were engaged, there would be no opportunity to pull the hand clear before the hand would be drawn into the rollers.

Roderick Ogle, the sheet metal shop foreman, testified that just before the accident, McIntosh entered his office to ask a question. Ogle did not observe anything unusual in McIntosh's demeanor or mannerism; McIntosh did not exhibit red eyes, slurred speech, or an abnormal gait. Ogle agreed that if a person had a hand next to a roller when it was engaged, he would have virtually no time to react and remove it. Ogle testified that the roller machine and one other machine are probably the two most dangerous machines in the workshop.

The Department of Labor granted assistance to McIntosh and required Interstate to extend temporary disability and medical benefits. Interstate filed a petition in the Chancery Court for Knox County seeking a determination of its rights and responsibilities regarding McIntosh's workers' compensation claim. Interstate alleged that McIntosh was under the influence of illegal drugs on the date of the accident in violation of its drug-free workplace policy and the provisions of Tennessee Code Annotated section 50–6–110.[3] Interstate ar-

1. Interstate is a certified drug-free workplace pursuant to chapter 9, title 50 of the Tennessee Code Annotated and has a policy against the use of marijuana by employees. "After an accident that results in an injury, as defined in chapter 3 of this title, and the rules promulgated thereunder, the covered employer shall require the employee to submit to a drug or alcohol test in accordance with the provisions of this chapter." Tenn.Code Ann. § 50–9–106(a)(5) (2005).

2. According to state regulations, a THC level of equal to or greater than 50 ng/mL is pre-sumed to be a positive confirmation of marijuana in the screened specimen. Tenn. Comp. R. & Regs. 0800–2–12–.03(17)(a) (2007).

3. Tennessee Code Annotated section 50–6–110(a) (2005) states that "[n]o compensation shall be allowed for an injury or death due to the employee's willful misconduct or intentional self-inflicted injury, due to intoxication or illegal drug useage [sic], or willful failure or refusal to use a safety appliance or perform a duty required by law."

gued that McIntosh should be denied benefits relying on section 50–6–110(c)(1), which provides that if an employer has implemented a drug-free workplace and an injured employee tests positive for a drug, there arises a presumption that the drug was the proximate cause of the injury.

At trial, the evidence concerned the causation of McIntosh's injury. It was stipulated that Interstate had implemented a drug-free workplace and that McIntosh had tested positive for marijuana. Therefore, the issue was whether McIntosh had rebutted the statutory presumption and had shown by the preponderance of the evidence that his drug intoxication was not the proximate cause of his injury. Interstate argued that the injury was caused by McIntosh's drug usage, while McIntosh argued that the injury was caused by the actions of an inexperienced employee.

After considering all the evidence in the case including the medical evidence, Chancellor Weaver issued a memorandum opinion in which he concluded that McIntosh had suffered a compensable injury and that he had successfully rebutted the statutory presumption:

> The evidence from Dr. Seger is that the THC caused the claimant's injury by impairing the claimant's reaction time. But under the evidence, there does not appear to be any connection with the claimant's reaction time.
>
> . . . . The evidence is unrebutted that if the claimant's finger was touching the rollers and the rollers activated, there would be no time to react.
>
> . . . .
>
> Now, here, we have a young, inexperienced worker operating one of the two most dangerous machines in the shop, who puts the machine in gear and cannot even turn it off.
>
> . . . .

> The claimant has rebutted by a preponderance of the evidence that the THC was the proximate cause of his injury. He may not have rebutted that the THC was a contributing cause, but the Court finds and concludes, under the law, that he has rebutted that it was the proximate cause of his injuries.
>
> . . . .
>
> The claimant has shown by a preponderance of the evidence that his injury was proximately caused by his employment.

The trial court awarded McIntosh 90% permanent partial disability to his left hand.

## II. STANDARD OF REVIEW

■ In a workers' compensation appeal, we review findings of fact de novo upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (Supp.2006); *Rhodes v. Capital City Ins. Co.*, 154 S.W.3d 43, 46 (Tenn.2004). We review questions of law de novo without a presumption of correctness. *Rhodes*, 154 S.W.3d at 46.

■ With respect to a trial court's findings of credibility and the weight given to oral testimony, we accord considerable deference in those circumstances on review because the trial court has the opportunity to observe the witnesses' demeanor and hear the in-court testimony. *Tobitt v. Bridgestone/Firestone, Inc.*, 59 S.W.3d 57, 61 (Tenn.2001); *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.Workers Comp.Panel 1995). The trial court's findings on credibility and weight of the evidence may be inferred from the manner in which the court resolves the conflicts in the testimony and decides the case. *Rhodes*, 154 S.W.3d at 46. However, we may draw our own conclusions about the

weight and credibility of expert testimony when the medical proof is presented by deposition. *Tobitt,* 59 S.W.3d at 61.

## III. ANALYSIS

We granted permission to appeal in this case because we have never decided a case involving the statutory presumption imposed by the Drug–Free Workplace Act.

### A. Legislative History

Tennessee enacted its first workers' compensation statute on April 15, 1919. 1919 Tenn. Pub. Acts, Ch. 123, § 1; *see also J. Daniel Huffines, Comment, Valencia v. Freland & Lemm Construction Company: Proving an Employer's Intent Remains Nearly Impossible in Tennessee,* 34 U. Mem. L.Rev. 717, 720 (2004). The Workers' Compensation Law replaced the common law system of tort liability by creating a framework in which employees may recover benefits for injuries arising out of and in the course of employment without regard to fault in exchange for statutory limits on recovery and a prohibition against common law remedies. *See* Tenn.Code Ann. § 50–6–103(a) (2005); *see also Huffines, supra,* at 720–21.

■ Despite the comprehensive no-fault system of compensation incorporated into Tennessee's Workers' Compensation Law, there are certain injuries that occur by accident in the scope of employment that are not covered. *See* Tenn.Code Ann. § 50–6–110(a) (2005). One such injury is one that occurs due to illegal drug usage. Under the Workers' Compensation Law, no compensation is allowed for an injury that occurs "due to intoxication or illegal drug[4] useage [sic]." Tenn.Code Ann. § 50–6–110(a). The employer bears the burden of proof to establish that an injury was proximately caused by the employee's intoxication or illegal drug usage. Tenn. Code Ann. § 50–6–110(b); *Dobbs v. Liberty Mut. Ins. Co.,* 811 S.W.2d 75, 77 (Tenn. 1991).

In 1996, the General Assembly enacted the Workers' Compensation Reform Act, which made extensive amendments to Tennessee Workers' Compensation Law including the adoption of the Drug–Free Workplace Act. 1996 Tenn. Pub. Acts, ch. 944, §§ 49–51. The legislative intent of the Drug–Free Workplace Act is to promote drug-free workplaces in order to maximize the productivity of employers in the state and to avoid the "costs, delays and tragedies associated with work-related accidents resulting from drug or alcohol abuse by employees." Tenn.Code Ann. § 50–9–101(a) (2005). In furtherance of these goals, the statute provides that "if an employer implements a drug-free workplace program" in accordance with the rules adopted by the Commissioner of Labor and Workforce Development, the employer may require drug testing, and "if a drug or alcohol is found to be present in the employee's system at a level prescribed by statute or by rule," the employ-

---

**4.** "Drug" is defined as "any controlled substance subject to testing pursuant to drug testing regulations adopted by the United States department of transportation.... The commissioner of labor and workforce development may add additional drugs by rule." Tenn.Code Ann. § 50–9–103(6) (2005). According to federal regulations, the drugs for which tests are required are marijuana, cocaine, amphetamines, phencyclidine (PCP), and opiates. 49 C.F.R. § 40.3 (2006). The commissioner of labor and workforce development has not added any drugs to this list. Tenn. Comp. R. & Regs. 0800–2–12–.03(7) (2007).

In 1994, Tennessee Code Annotated section 50–6–110(a) was amended to add injuries that occur due to "illegal drugs" to the list of injuries for which there is no compensation under the Workers' Compensation Law. 1994 Tenn. Pub. Acts, Ch. 765, § 1.

ee may be terminated and forfeits workers' compensation benefits. Tenn.Code Ann. § 50–9–101(b).

There are several statutory incentives to employers that implement a drug-free workplace program, including a discount on workers' compensation insurance premiums, *see* Tenn.Code Ann. § 50–6–418 (2005), authority for termination of an employee who tests positive for drugs or alcohol, *see* Tenn.Code Ann. § 50–9–101(b), and a rebuttable presumption in a defense to a workers' compensation claim, *see* Tenn.Code Ann. § 50–6–110(c)(1).

### B. Statutory Presumption under Tenn.Code Ann. § 50–6–110(c)(1)

Tennessee Code Annotated section 50–6–110(c)(1) provides a presumption in the employer's favor that an injury was proximately caused by alcohol or drugs in certain circumstances:

> In cases where the employer has implemented a drug-free workplace pursuant to chapter 9 of this title ... if the injured employee has a positive confirmation of a drug as defined in § 50–9–103, then it is presumed that such drug or alcohol was the proximate cause of the injury. This presumption may be rebutted by a preponderance of the evidence that such drug or alcohol was not the proximate cause of injury.

■ In the case at bar, it is undisputed that Interstate had implemented a drug-free workplace and McIntosh tested positive for marijuana; therefore, section 50–6–110(c)(1) raises a rebuttable presumption that McIntosh's marijuana use was the proximate cause of his injury. The trial court found that McIntosh successfully rebutted the presumption by showing by a preponderance of the evidence that marijuana was not the proximate cause of the injury.

Interstate argues on appeal that the trial court erred in its application of Tennessee case law and did not correctly apply the presumption that McIntosh was required to rebut. Interstate argues that the trial court incorrectly placed the burden of proof on Interstate as revealed by the trial court's reliance on *Overall v. Southern Subaru Star, Inc.,* 545 S.W.2d 1 (Tenn.1976), and *Fireman's Fund Ins. Co. v. Mills,* No. 03S01–9601–CH–00008, 1996 WL 724922, at *1 (Tenn. Workers' Comp. Panel Dec. 18, 1996). The decisions in *Overall* and *Mills* preceded the Drug–Free Workplace Act and did not involve the statutory presumption under Tennessee Code Annotated section 50–6–110(c)(1). In *Overall,* we held that an employer has the burden of proof when invoking the defense to a workers' compensation claim that the injury was due to the employee's intoxication. 545 S.W.2d at 4. We explained that in order for the intoxication to be the proximate cause of the injury, the employer must show that the intoxication was more than merely a remote or contributing cause. *Id.* In *Mills,* the Special Workers' Compensation Appeals Panel held that the scientific evidence presented—that an employee's blood contained high levels of an intoxicant—was insufficient to establish that the intoxicant was the proximate cause of the injury. 1996 WL 724922, at *2.

■ While the trial court did cite *Overall* and *Mills,* it did not cite these cases for their law regarding the party upon which the burden of proof rested. It does not appear from the record that the trial court misplaced the burden on the employer to show that the drug use was the proximate cause of the injury. In his memorandum opinion, Chancellor Weaver is clear that the statutory presumption applied in this case and that McIntosh had the burden to show that marijuana was not the proxi-

mate cause of the injury. The court found specifically as follows:

> "The claimant has rebutted by a preponderance of the evidence that the THC was the proximate cause of his injury. He may not have rebutted that the THC was a contributing cause, but the Court finds and concludes, under the law, that he has rebutted that it was the proximate cause of his injuries.
>
> . . . .
>
> The claimant has shown by a preponderance of the evidence that his injury was proximately caused by his employment."

For these reasons, we conclude that the trial court properly placed the burden on the employee to rebut the presumption.

### C. Proximate Cause

██ Interstate argues that the trial court erred by finding that McIntosh proved by a preponderance of the evidence that his marijuana use was not the proximate cause of his injury. To support its position, Interstate offered at trial Dr. Seger's testimony that the level of THC in McIntosh's system was the result of acute intoxication instead of from heavy, chronic use and that as a result of acute intoxication, McIntosh's reaction time would have been impaired. According to Interstate, McIntosh's impairment was the proximate cause of his injury.

██ "The proximate cause of an injury generally is the act or omission which immediately causes or fails to prevent injury which would not have been inflicted in the absence of such an act or omission occurring or concurring with another." *Solomon v. Hall,* 767 S.W.2d 158, 161 (Tenn.Ct.App.1988); *see Tenn. Trailways, Inc. v. Ervin,* 222 Tenn. 523, 438 S.W.2d 733, 735 (Tenn.1969). A proximate cause of an injury is a cause that produced the result in continuous sequence and without

which it would not have occurred. *Solomon,* 767 S.W.2d at 161.

We note, as the trial court did, that Dr. Seger's testimony was that the level of THC in McIntosh's system would have impaired his reaction time. In this case, the undisputed evidence from McIntosh, from Walker, the coworker, and from Ogle, the sheet metal shop foreman, was that there would be no time to react if a person had a hand next to a roller when it was engaged. According to McIntosh, he reached over the roller machine from behind to set a piece of sheet metal when Walker engaged the rollers. The rollers immediately grabbed McIntosh's hand. McIntosh had no time to react. Based on this testimony and the presumption of correctness given to a trial court's findings of fact, we agree with Chancellor Weaver that there does not appear to be any connection between the claimant's impaired reaction time and the cause of the injury. *See Rhodes v. Capital City Ins. Co.,* 154 S.W.3d 43, 46 (Tenn.2004).

McIntosh had worked for Interstate for five years and had been doing similar work since leaving high school after the tenth grade. He was an experienced worker, and Interstate relied on him to train new employees on the machines in the sheet metal shop. At the time of his injury, he was instructing Walker, a new and inexperienced employee, on how to operate the power roller machine, one of the most dangerous machines in the shop. Walker engaged the rollers while McIntosh's hand was placed on the rollers, and the hand was pulled into the machine. Furthermore, McIntosh had to act quickly to disengage the rollers and release his hand because Walker, who was stunned from McIntosh's screams, was unable to move the lever to the neutral position. McIntosh's quick reaction saved his arm.

Whether McIntosh may have been negligent in approaching the machine from behind is of no consequence because an employee's ordinary negligence will not bar recovery in a workers' compensation case.[5] *See Moore v. Cincinnati, New Orleans, & Tex. P. R.R. Co.,* 148 Tenn. 561, 256 S.W. 876, 879 (Tenn.1923) ("However careless, and even reckless, this conduct, it cannot be said to have been willful or intentional, so as to bar recovery under the Compensation Act. It is not within the purpose of this act to dip into the domain of contributory negligence. No degree of negligence bars.") The issue is whether McIntosh has shown by a preponderance of the evidence that his drug usage was not the proximate cause of his injury.

The trial court had the opportunity to observe the demeanor and gauge the credibility of McIntosh and his co-worker, Walker, when they gave testimony in the courtroom. Because the trial court decided this case in McIntosh's favor, we may infer that the trial court found McIntosh's testimony to be credible. *See Tobitt,* 59 S.W.3d at 61. And we accord considerable deference to a trial court's findings of credibility and the weight given to oral testimony in those circumstances on review. *McCaleb,* 910 S.W.2d at 415.

Except for the new employee engaging the rollers while McIntosh was demonstrating how to use the machine to bend a piece of sheet metal, the accident would not have occurred. To establish that Walker's actions were the proximate cause of the injury, it is not necessary to show that his actions were the sole cause of the accident. *See Dobbs v. Liberty Mut. Ins. Co.,* 811 S.W.2d 75, 77 (Tenn.1991). McIntosh was the only witness to the mechanics

of the injury as Walker was not looking at the roller when the injury occurred. The trial court did not err by concluding that Walker's actions were the proximate cause of the injury.

## IV. CONCLUSION

We hold that the trial court correctly applied the statutory presumption that the illegal drug usage was the proximate cause of the injury. And because there was ample evidence in this case to rebut the statutory presumption that McIntosh's injury was caused by his drug usage, the trial court did not err by so finding. The judgment of the Chancery Court for Knox County is affirmed.

Costs in this case are taxed to the appellant, Interstate Mechanical Contractors, Inc., and its sureties, for which execution may issue if necessary.

---

**5.** However, an employee's willful misconduct or intentional self-inflicted injury or willful failure or refusal to use a safety appliance or perform a duty required by law will bar recovery in a workers' compensation case. Tenn.Code Ann. § 50–6–110(a).