James M. DOBBS, Plaintiff/Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant/Appellee.

Supreme Court of Tennessee,
at Nashville.

May 6, 1991.
Rehearing Denied June 10, 1991.

Mark W. Henderson, Hendersonville, for plaintiff/appellant.

Ed R. Davies, Robert E. Davies, Nashville, for defendant/appellee.

## OPINION

ANDERSON, Justice.

In this worker's compensation direct appeal, the trial court held the employee's injury was "due to intoxication" and therefore not compensable. We agree and affirm.

The plaintiff, James Dobbs ("Dobbs"), was either employed by Allied Construction Company, Inc., or Eugene Key, a subcontractor of Allied, as a carpenter, and was assigned to a crew which was completing the interior of a two-story log home. The defendant, Liberty Mutual Insurance Company ("Liberty"), insured Allied Construction Company, Inc. Eugene Key was uninsured. On the morning of June 9, 1988, Dobbs was feeling ill and told his foreman, Eugene Key, that he was not going to work that day. Dobbs says he felt ill because he drank one-half pint of orange-flavored vodka, mixed with two to three beers, between 6:00 p.m. and 9:00 p.m. the previous evening. Dobbs testified at trial that he did not get drunk and that he went to bed at 10:30 or 11:00 p.m. Dobbs' wife was at home while he was drinking, but does not remember how much he had to drink.

Dobbs says when he returned home from the job site the next morning, he went to sleep and slept from 8:00 a.m. until 11:30 a.m. He then had another beer, after which his foreman and co-workers came to his house to eat their lunch. He ate no lunch and when his foreman asked him to return to work, Dobbs agreed. At about 1:00 p.m., the crew returned to work. Dobbs began working inside the house on the framing above the stairwell, on the second story. While standing on a solid surface about fifteen minutes later, Dobbs fell backwards some twelve feet to the lower floor. He testified at trial that he had lost his balance, but there was no apparent cause for this loss of balance. Dobbs said that he had been an iron worker, was used to working at heights, and never had had balance problems in the past.

A co-worker recalled that Dobbs came to the job site on the morning of the accident, vomited, smelled like a brewery, admitted that he had gotten drunk the night before, told the foreman he "couldn't hack it," and went home. The same co-worker and others said Dobbs appeared all right when he went to work at 1:00 p.m. Dobbs himself concedes he has blank spots in his memory about the night before his accident. At one point in his sworn testimony he admitted he probably had the shakes when he went back to work, but at another point denied it.

While Dobbs lay injured, awaiting the ambulance, the homeowner, Diane Williams, who had been a surgical nurse, attended him. She testified that she noted a very strong smell of alcohol on his breath.

Dobbs was admitted into the emergency room at Sumner Memorial Hospital at 2:42 p.m., with a fractured vertebrae and a fractured bone in his pelvis. The emergency room nurse noted that he had the smell of alcohol on his breath strong enough to chart, although he denied drinking anything. No blood alcohol test was performed. When he arrived on the hospital floor from the emergency room at 4:50 p.m., the floor nurse reported she smelled alcohol "very strongly" on Dobbs' breath.

Troy McCormick, a drinking friend, testified he visited Dobbs in his room between 4:30 and 5:30 p.m. and gave him two drinks of vodka. Dr. Wayne Hooper first saw Dobbs at 7:30 p.m. in his hospital room and took a history. He noticed that Dobbs smelled of alcohol and charted it, which meant that it was a prominent finding. Dr. Hooper's history shows that Dobbs said that his injury occurred when he fell from the roof of the house, and also that he drank nine beers a day on a daily basis, but had no trouble working.

Russell Campbell, a blood alcohol expert, testified that Dobbs had a significant amount of alcohol in his system at 2:42 p.m. and 4:50 p.m.; that at the time of his fall, his body function was impaired due to the consequences of intoxication; and that his fall and injury was "due to intoxication."

On the next hospital day, Dr. Hooper began to treat Dobbs for delirium tremens, or alcohol withdrawal. Dr. Hooper released Dobbs from the hospital on June 13, 1988, with orders strictly prohibiting future alcohol use. Hooper's partner, Dr. Robert McDaniel, continued to follow Dobbs and released him to return to work on July 25, 1988.

Apparently no physician saw Dobbs between July 25, 1988, and January 5, 1989, when Dobbs was referred by Liberty to Dr. John McInnis for a disability evaluation. Dr. McInnis found Dobbs had reached maximum medical improvement sometime between those dates. He testified that the July date would have been too early for Dobbs to have reached maximum medical improvement given his injury. McInnis gave Dobbs an impairment rating of 30 percent to the body as a whole.

On December 6, 1988, Liberty paid Dobbs temporary total disability benefits for six weeks and three days, the period of time between the accident and Dr. McDaniel's release, based upon the minimum wage. Dobbs' worker's compensation complaint was filed on April 25, 1989, and Liberty's answer was filed on May 26,

1989, asserting the affirmative defense of intoxication. Liberty filed a notice of controversy on October 26, 1989, over ten months after the December payment, and over sixteen months after Dobbs' injury.

Our review of findings of fact by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e); *Lollar v. Wal–Mart Stores, Inc.*, 767 S.W.2d 143 (Tenn.1989). "This standard differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases." *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987).

■ Dobbs first argues that Liberty failed to prove that he was intoxicated at the time of his fall; therefore, says Dobbs, his injury was not "due to intoxication." Tennessee Code Annotated, § 50–6–110, states:

(a) No compensation shall be allowed for an injury or death due to the employee's willful misconduct or intentional self-inflicted injury, or *due to intoxication*, or willful failure or refusal to use a safety appliance or perform a duty required by law.

(b) If the employer defends on the ground that the injury arose in any or all of the above-stated ways, *the burden of proof shall be on the employer to establish such defense.*

(Emphasis added.)

As this Court pointed out in *Overall v. Southern Subaru Star, Inc.*, 545 S.W.2d 1, 4 (Tenn.1976), in order to invoke the intoxication defense, the "employer has the burden of establishing proximate cause." However, we also pointed out that the employer is not required to prove that "the employee's intoxication was the sole cause." We interpret the statute's words "due to intoxication" to require that intoxication be a cause of the injury.

Approximately five hours before the fall, Dobbs was so physically ill from alcohol consumption he could not work. He admits to drinking a half-pint of vodka and two or three beers over a three-hour period, but concedes his memory was poor about the night before his accident. There was ample evidence immediately after the fall of a strong odor of alcohol. He gave several different versions as to where and how his fall occurred at different times to different people. A day after the accident, he developed symptoms of alcohol withdrawal, and it was his treating doctor's opinion he was an alcoholic. He lost his balance, a known effect of alcohol, and there was no other apparent cause for the fall. Dobbs concedes some alcohol had been consumed shortly before the fall.

Our review of this evidence leads us to conclude that the evidence does not preponderate against the finding of the trial court, that Dobbs' fall was "due to intoxication."

■ Dobbs next argues that Liberty is precluded from raising the intoxication defense, by its failure to timely file a notice of controversy. Tennessee Code Annotated, § 50–6–205(c) and (d), provides:

(c) Upon making the first payment of benefits, and upon stopping or changing such benefits for any cause other than final settlement, or upon denying a claim after proper investigation, the employer's insurance carrier or the employer, if self-insured, shall immediately notify the director, on a form prescribed by him, that the payment of income benefits has begun or has been stopped or changed. Failure to file such notice shall be a misdemeanor and shall upon conviction be punishable by a fine of not more than fifty dollars ($50.00).

(d) If payments have been made without an award, and the employer subsequently elects to controvert his liability, notice of controversy shall be filed with the director *within fifteen (15) days of the due date of the first omitted payment.* In such cases the prior payment of compensation shall not be considered a binding determination of the obligations of the employer as to future compensation payments. Likewise, the acceptance

of compensation by the employee shall not be considered a binding determination of the obligations of the employer as to future compensation payments; nor shall the acceptance of compensation by the employee be considered a binding determination of his rights.

(1983 & Supp.1990) (emphasis added). Specifically, Dobbs argues that since Liberty stopped making payments on December 6, 1988, its failure to file a notice of controversy within fifteen days after that date operates as a waiver of all defenses. However, the statute says nothing about a waiver of defenses; on the contrary, payments made and accepted prior to an award are merely "not to be considered a binding determination of [the parties'] rights."

Liberty argues that it did not omit any payment and that it complied with the terms of the statute. Liberty contends that Dobbs was released to return to work by his physician on July 25, 1988, that his period of temporary total disability ended on that day, that he was paid for that period based on a minimum wage, and that there was no satisfactory documentary evidence of pay in excess of the minimum wage rate. Liberty also contends that if Dobbs ultimately proves his injury to be a permanent injury and compensable, the "first omitted payment" would be the first judicially adjudicated payment of permanent partial disability benefits, and such benefits would not be "due" until the time of adjudication. Liberty argues that Tenn. Code Ann. § 50–6–205(c) must be construed together with section (d), and that (c) states that when payment of benefits is started and subsequently stopped upon denial of the claim following proper investigation, the employer is then required to immediately notify the director of the division of worker's compensation. They argue that the investigation of this claim was made difficult because of factors not under their control; that Liberty was ultimately required to employ counsel to complete the investigation; and that as soon as the investigation was complete, the notice of controversy was filed.

It is true that in *Goins v. Kayser–Roth Hosiery, Inc.,* 751 S.W.2d 423 (Tenn.1988),

we held that the failure of the employer to comply with the statutory notice requirement "precludes it from now contending that the accident and the resulting injury to the employee were not within the coverage of the worker's compensation statutes." *Id.* at 424. However, in that case, Goins had been a direct employee of the defendant for twelve years when she slipped and fell inside her place of employment. Notice was immediately given of the accident. She was furnished medical services and paid temporary total disability benefits, and the case was accepted by the employer as fully compensable. In its answer, filed five months after the injury, the employer challenged for the first time the compensability of the injury, upon the ground that it occurred before plaintiff had reached her work station and therefore was not in the course of employment. Despite the fact that all the facts and circumstances of the accident had been immediately available to the employer after the accident and were known prior to its decision to accept the case as being fully compensable, the employer never filed a notice of controversy. Our ruling was confined to those egregious facts.

In contrast in this case, the facts upon which to base a defense could not be immediately determined by Liberty. The reasons included the fact that Dobbs' attorney, who was hired within five weeks of the injury, refused to make Dobbs available for an interview, and was otherwise uncooperative; the fact of a dispute as to whether Dobbs and other witnesses were direct employees of the insured, or employees of a subcontractor; the fact that the homeowner was then involved in litigation with the insured over the construction of the home and uncooperative; the fact that payroll records were not made available as to the wage rate of Dobbs; and the fact that ultimately in order to complete the investigation, an attorney was employed and discovery depositions were taken. In short, we are not here concerned with a *Goins* coverage question where all the facts demonstrating statutory worker's compensation coverage were within the

possession of the employer on the date of the accident and injury. Rather, we are concerned here with a case where statutory coverage is conceded, and the issue is whether the employer may assert an affirmative defense where there was substantial difficulty in investigating the facts on which to base the defense. We conclude that no payment was "omitted" under the terms of the statute, because the defendant had paid temporary total disability based on the facts then known, and conducted a reasonable investigation, hampered by circumstances beyond its control, to determine whether it had a complete defense to claims for permanent and additional temporary total disability benefits. Accordingly, we hold that Liberty Mutual timely filed the notice of controversy.

For the reasons enumerated above, the trial court's order denying worker's compensation benefits is affirmed. Costs are taxed to the appellant.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.