FILED

October 2, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 10:25 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| **JIMMIE RAMSEY,** | ) | **Docket No. 2016-06-2189** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **State File No. 62698-2016** |
| **T.E. ROBERTS,** | ) | |
| **Employer,** | ) | |
| | ) | |
| **UNITED FIRE & CASUALTY** | ) | **Judge Joshua Davis Baker** |
| **COMPANY,** | ) | |
| **Insurance Carrier.** | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

This matter came before the Court on September 14, 2017, on Jimmie Ramsey's request for expedited hearing seeking medical benefits. T.E. Roberts argued that Mr. Ramsey lost his right to any benefits when he failed a post-accident drug screen. The Court agrees and denies Mr. Ramsey's request for workers' compensation benefits at this time.

### History of Claim

This claim concerns a fall at work and alleged illegal drug use. Mr. Ramsey worked as a laborer for T.E. Roberts. On August 17, 2016, he fell from a height of approximately two feet while descending a ladder. He incurred multiple injuries from the accident. On the date of accident, Mr. Ramsey gave a urine sample for drug testing, and the sample indicated marijuana use. Upon receiving the test results, T.E. Roberts, a member of the Tennessee Drug Free Workplace Program (TDFWP), terminated Mr. Ramsey and denied his claim. The only issue at the expedited hearing concerned whether Mr. Ramsey's positive drug screen barred his recovery of workers' compensation benefits.

The day after his termination and five days after giving the first sample, Mr. Ramsey submitted another urine sample for private testing. While the test indicated he

had marijuana metabolites in this bloodstream, the level was too low to constitute a positive drug test.

Mr. Ramsey testified that, although he smoked marijuana several days before the accident, he smoked none that morning and was not intoxicated. His direct supervisor, Jimmy Collins, testified he saw Mr. Ramsey that morning and spent several minutes with him during group stretching exercises and while assigning him work. Mr. Collins said Mr. Ramsey did not appear to be intoxicated.

Instead of intoxication, Mr. Ramsey testified that his inexperience using the safety harness and the employer's failure to train him in its proper use resulted in his injury. While he admitted Mr. Collins showed him how to use the device, he claimed the training was insufficient. Mr. Ramsey described difficulty donning the harness, claimed it did not fit, and said the harness slipped down off his body before he fell from the ladder.

Mr. Collins, on the other hand, testified he fit the harness for Mr. Ramsey's use and spent about twenty minutes teaching him to the use the equipment. He further stated that Mr. Ramsey used the harness several days before the accident with only minimal difficulty.

T.E. Roberts also introduced a copy of Mr. Ramsey's personnel file. The file contained a copy of a document entitled "Rules of Conduct and Work Habits." Although the document bears Mr. Ramsey's name on the first page, the signature line on the second page is blank. Information giving employees notice that T.E. Roberts was a certified drug free workplace was contained on the unsigned page. Mr. Ramsey denied seeing the document or knowing that T.E. Roberts participated in the TDFWP. He also denied he wrote his name on the first page. T.E. Roberts introduced other examples of Mr. Ramsey's handwriting in an attempt to impeach his testimony.

T.E. Roberts also introduced a letter from the Bureau of Workers' Compensation acknowledging the Bureau's receipt of its application for acceptance to the TDFWP. The letter came from Mr. Ramsey's personnel file. Additionally, Terry Roberts, owner of the company, testified that the company regularly conducts random drug tests, requires them after any work-related injury, and requires them for safety-sensitive positions. Mr. Roberts stated the company put the policy in place several years ago. He also stated that the "Rules of Conduct and Work Habits" are included in every employment application.

## Findings of Fact and Conclusions of Law

In order to prevail at an expedited hearing, Mr. Ramsey must provide sufficient evidence from which this Court can determine that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2016). The Court finds he is unlikely

2

to prevail at a hearing on the merits.

The lab-test results of urine collected on the day of Mr. Ramsey's accident indicated he used marijuana. Further, it appears from the results that the lab conducted a confirmation test, which was also positive for marijuana. Additionally, Mr. Ramsey requested his own test five days after the accident. That test showed his "cannabinoid" level was 41 ng/ml on August 22, 2016. The cut-off for a positive initial test is 50 ng/ml. However, the cutoff for a positive confirmation test, which is usually conducted five days after the initial test, is 15 ng/ml. *See* Tenn. Comp. R.. & Regs. 0800-02-12-.03(17)(a) (2017).

T.E. Roberts asserted the affirmative defense that, as a member of the TDWFP, Mr. Ramsey's positive drug screen resulted in a presumption that illegal drug usage was the proximate cause of his injury. *Id*. at § 50-6-110(c)(1). It further argued that due to the positive drug screen, Mr. Ramsey bore the burden of proving by "clear and convincing evidence" that drug use was not the proximate cause of his injury. *Id*. T.E. Roberts claimed Mr. Ramsey failed to carry this burden, thus rendering his claim non-compensable pursuant to Tennessee Code Annotated section 50-6-110(a)(3). The Court agrees.

In order for the presumption to arise, T.E. Roberts must show that, "it has implemented a drug-free workplace" pursuant to statutory and regulatory guidelines. *Id*. at § 50-6-110(c)(1). The Court finds that T.E. Roberts implemented this policy. A copy of a memo from the Bureau of Workers' Compensation acknowledged that the Bureau had accepted T.E. Roberts' application to participate in the TDFWP program. Under Tennessee Code Annotated section 50-9-104(b), the filing of the application "shall create a rebuttable presumption that the employer has established a drug-free workplace program and is entitled to the protection and benefit of this chapter," which includes a shift in the burden of proof whenever an employee tests positive for drugs following a workplace accident. Mr. Ramsey's personnel file contained a copy of the letter.

In addition to the application, Mr. Collins testified that he knew of T.E. Roberts' participation in a TDFWP program. He said was tested multiple times while working for T.E. Roberts. Mr. Roberts explained that the company regularly conducts random drug tests, requires them after any work-related injury, and requires them for safety-sensitive positions. Mr. Roberts stated the company put the policy in place several years ago. He also stated that the "Rules of Conduct and Work Habits," which warn potential employees of T.E. Roberts' participation in the TDFWP program, are included in every employment application.

For his part, Mr. Ramsey did not sign the "Rules of Conduct and Work Habits" included in his personnel file and denied having seen the document. He also claimed he

did not write his name on the top line of the document and denied knowing of T.E. Roberts' participation in the TDFWP program. Upon reviewing the samples of his handwriting presented by T.E. Roberts, the Court does not find his testimony on this issue credible. The handwritten name on the top of the application matches almost identically to Mr. Ramsey's handwriting on his petition for benefit determination. The Court finds that Mr. Ramsey printed his name on the top line of the "Rules of Conduct and Work Habits."

Based on these findings, the Court holds that T.E. Roberts met its burden in proving the presumption arose that Mr. Ramsey's marijuana use proximately caused his workplace accident. In order to prevail in his request for benefits, Mr. Ramsey must rebut this presumption by "clear and convincing evidence." *See* Tenn. Code Ann. § 50-6-110(c)(1). The Court holds that he failed to do so.

Clear and convincing evidence is evidence that leaves "no serious or substantial doubt" in the mind of the fact finder about the conclusions to draw from the evidence. *See Goff v. Elmo Greer & Sons Const.*, 297 S.W.3d 175, 187 (Tenn. 2009) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Mr. Ramsey admitted he smoked marijuana four days before the accident but denied smoking it on the date of the accident. He denied being intoxicated on the date of the accident, and Mr. Collins also said he did not think Mr. Ramsey was intoxicated. This is only proof presented to rebut the presumption that marijuana use proximately caused the accident.

The Court did not find Mr. Ramsey a credible witness. T.E. Roberts impeached his credibility by the false testimony he gave concerning the appearance of his name on the "Rules of Conduct and Work Habits." The Court finds unreliable Mr. Ramsey's testimony about when he last smoked marijuana, and his lack of knowledge that T.E. Roberts participated in the TDFWP. Additionally, Mr. Ramsey provided no proof about the effects on his reaction time that may have resulted from the level of marijuana metabolites present in his bloodstream on the day of the accident. *See Interstate Mech. Contractors, Inc. v. McIntosh*, 229 S.W.3d 674, 681-82 (Tenn. 2007) (Discussing how the effects of marijuana affect reaction time.).

The Court is left with "substantial doubt" concerning whether Mr. Ramsey's fall at work did not result from intoxication. The Court, therefore, finds that Mr. Ramsey did not prove by clear and convincing evidence that intoxication did not cause his accident. Accordingly, the Court holds that Mr. Ramsey is unlikely to prevail at a hearing on the merits in proving he suffered a compensable claim.[1]

---

[1] The Court, however, notes that this holding does not prevent Mr. Ramsey from marshalling additional evidence to present at a compensation hearing where he might ultimately prove entitlement to benefits.

4

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Ramsey's claim for workers' compensation benefits is denied at this time.

2. This matter is set for a status conference on **November 6, 2017, at 9:30 a.m. (CT)**.  The Court will convene the hearing via telephone. You must call 615-741-2113 or toll-free at 855-874-0474 to participate in the Hearing.

**ENTERED ON THIS THE 2ND DAY OF OCTOBER, 2017.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

# **APPENDIX**

Exhibits:

1. Affidavit of Jimmy Ramsey
2. Denial Letter
3. E-screen Drug Screen Results
4. Aversys Drug Screen Results
5. Amended Wage Statement
6. Personnel File
7. Petition for Benefit Determination
8. Medical Records


Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. T.E. Roberts' Witness and Exhibit List
5. T.E. Roberts' Prehearing Statement
6. Mr. Ramsey's Witness and Exhibit List
7. Mr. Ramsey's Prehearing Statement

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on the  2nd  day of October, 2017.

| Name | Certified Mail | Via Fax | Via Email | Email Address |
|------|------|------|------|------|
| **Luvell Glanton, Employee's Attorney** | | | X | glantonfirm@gmail.com |
| **Michael Jones, Employer's Attorney** | | | X | mjones@wimberlylawson.com |

**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**