

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **JARED KIZER,** | ) | **Docket No. 2017-07-0073** |
| Employee, | ) | |
| **v.** | ) | |
| **EXPRESS EMPLOYMENT,** | ) | **State File No. 81955-2016** |
| Employer, | ) | |
| **and** | ) | |
| **AMERICAN INSURANCE GROUP,** | ) | **Judge Allen Phillips** |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

Mr. Kizer requested medical and temporary disability benefits for an injury to his right hand. Express Services (Express) denied his claim on grounds of illegal drug use. The Court heard the contested issues at an Expedited Hearing on January 24, 2018, and now holds Mr. Kizer would likely prevail at a hearing on the merits regarding his request for medical benefits. The Court denies his request for temporary disability benefits.

### History of Claim

Express, a staffing agency, assigned Mr. Kizer to work at Pinnacle Foods, a frozen food manufacturer. On October 20, 2016, Mr. Kizer was operating a "splitter" machine that cut blocks of frozen fish into fish sticks. He claimed the machine malfunctioned and amputated three fingers on his right hand.

Express denied Mr. Kizer's claim after a post-accident urinalysis revealed the presence of THC, a metabolite of marijuana. Because it was a participant in the Tennessee Drug Free Workplace Program (DFWP), Express also asserted that Mr. Kizer's drug use was the presumptive proximate cause of his injury. Mr. Kizer agreed Express was a DFWP participant and conceded that he smoked marijuana. However, he disputed that drug use caused his injury.

1

Namely, Mr. Kizer explained the splitter machine malfunctioned when he tried to align a "jammed" block of frozen fish. He claims he "hit the e-stop," a switch that completely stops the machine from running, and then "raised" a door designed to disengage the machine. He then reached inside the machine, removed "eight blocks of fish," cleaned some half-melted fish residue from the side of the machine, and manipulated several other blocks of fish in an effort to clear the misalignment. The machine then unexpectedly "cut on and pulled [his] hand" against the steel frame. Mr. Kizer testified he had performed the task "a million times" and that he was "taught" to operate the machine in the way he did. He said his only training was how to "load and stop" the machine and that the training included no specific safety instruction.

Mr. Kizer denied being under the influence of marijuana when injured and pointed out he had successfully operated the machine since 4 p.m., five hours before the injury. Mr. Kizer admitted smoking marijuana on the morning of October 20, but some thirteen-plus hours before his injury. He also worked through the morning at another job on a farm owned by a friend. He then went home to rest and travelled from his home in Lexington to Pinnacle's facility in Jackson.[1] Mr. Kizer admitted he was a habitual marijuana smoker, smoking regularly for some time prior to the accident. He conceded his memory was not clear as to exactly how often he smoked marijuana, both at the time of injury and currently, and he acknowledged the drug effects his memory.

Brock Wilson, Pinnacle's Director of Workers' Compensation testified via affidavit that Mr. Kizer's use of the splitter machine "was not in compliance with the safety procedures for that machine." Specifically, a report attached to his affidavit indicated the first Pinnacle employee "on the scene" noted the e-stop was not engaged as Mr. Kizer alleged but did function properly when tested. Further, the investigation revealed Mr. Kizer apparently held the machine's door open with his left hand while reaching inside with his right, thus exposing his hand to the machine's ramming device. However, Pinnacle's investigation also "discovered the interlock adjustment was so that [it] allowed the [door] to travel some distance prior to it activating and shutting off [the machine] thus allowing Mr. Kizer access to the product area."

Pinnacle's investigation also determined "the operators knew about the [machine's] shutdown process," but "no documentation [of such], nor training . . . was located." Pinnacle instituted "initial corrections" after the accident, including placing a bolt in the door that forced operators to completely lift the door to activate the interlock device and training all operators on a "communication of expectations" regarding machine operation.

Philip Miller was a former Pinnacle employee who worked as the lead maintenance technician on Mr. Kizer's shift at the time of injury. He also rendered first

---

[1] The Court takes judicial notice that this is approximately a thirty-mile trip, one-way.

aid to Mr. Kizer. Mr. Miller testified that Mr. Kizer did not appear intoxicated on the night of the accident. Further, Mr. Miller verified after the accident that the machine's e-stop was working but found that the machine did cycle if the door was only partially raised. He confirmed that Pinnacle immediately placed the bolt referenced in the investigative report and developed a "six-step protocol" for employees to follow after Mr. Kizer's injury. He noted almost all employees on second shift were "temps," like Mr. Kizer, and lacked proper training on how to operate the machine. However, Mr. Miller confirmed that, if Mr. Kizer opened the door with one hand while placing the other inside, then he used the same technique as other operators and had violated no known safety protocols.

TOSHA investigated the accident and found that the machine would "cycle" when the door of the machine was open, "exposing the employees to injury."[2] The TOSHA inspector determined the machine had inadequate guarding and cited Pinnacle for a "Serious Violation."

Dr. Mario Figueroa, the emergency room physician who treated Mr. Kizer following the accident, stated he did not "find [Mr. Kizer] to be intoxicated or cognitively impaired in any way." Regarding whether Mr. Kizer might have been "impaired in another way," Dr. Figueroa said, "I cannot tell you that . . . I'm telling you as [sic] when I examined the patient, he didn't appear impaired to me."

Mr. Kizer also offered deposition testimony from Dr. Kenneth Ferslew, a toxicologist. Dr. Ferslew explained the urinalysis only establishes Mr. Kizer used marijuana "anywhere from hours to days prior to" the accident. The results neither prove nor disprove that Mr. Kizer was under the influence of marijuana at the time of the accident. Instead, Dr. Ferslew testified he would need other "forensic evidence" to establish proof of intoxication.

Dr. Michael Dolan, an orthopedic surgeon, performed surgery to debride and close Mr. Kizer's wounds. He explained that Mr. Kizer will require further surgical procedures to prepare the stumps of his fingers for possible attachment of a prosthetic hand. He did not believe Mr. Kizer would reach maximum medical improvement until two years after the injury and would have a significant impairment from a "mangling, life-changing injury." He noted the emergency room records did not indicate Mr. Kizer was

---

[2] Express objected to admission of the TOSHA report on grounds it lacked trustworthiness in contravention of Tennessee Rule of Evidence 803(8)'s hearsay exception regarding "Public Records and Reports." Express contended the report included information other than TOSHA's investigation of Mr. Kizer's accident and the splitter machine. The Court agrees that the report includes much information not relevant here and which the Court did not consider. However, the Court finds nothing that calls into question the report's trustworthiness. Instead, the Court considers that the report documents the activities of TOSHA required by law and is an exception from the rule against hearsay.

intoxicated, and he never noticed any signs of intoxication during approximately a dozen follow-up examinations of Mr. Kizer.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

Mr. Kizer must present sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2017).

### Analysis

### *Illegal drug use defense*

The Court will analyze the evidence in light of the parties' stipulation that Express was part of the DFWP and entitled to all of its protections. When so doing, the Court first looks to Tennessee Code Annotated section 50-6-110(c)(1) which affords a presumption that Mr. Kizer's drug use was the "proximate cause of [his] injury." "Proximate cause" means the cause producing an injury and, without which, it would not have occurred. *Solomon v. Hall*, 762 S.W.2d 158, 161 (Tenn. Ct. App. 1988). Mr. Kizer may rebut this presumption by "clear and convincing evidence," which means there is no serious or substantial doubt regarding the facts and that they are "highly probable." *See Teter v. Republic Parking Sys.*, 181 S.W.3d 330, 341 (Tenn. 2005). Thus, Mr. Kizer must produce facts that create no serious or substantial doubt that his drug use did not cause his injury and that it is highly probable it did not. For the following reasons, the Court finds Mr. Kizer carried his burden.

First, Mr. Kizer explained he operated the machine on the day of injury in the same way he routinely operated it, just as he had done "a million times." He said he was "taught" to operate the machine the way he did, and Mr. Miller corroborated that employees on Mr. Kizer's shift "routinely" performed the same action as Mr. Kizer. Mr. Miller did not believe Mr. Kizer violated any safety protocols and noted that virtually all second shift employees were "temps," lacking proper training in the splitter machine's operation. Such testimony is highly probative because, as Express pointed out, Mr. Miller did not "have a dog in this fight" and was "just there to tell the truth." By its direct observation of him, the Court notes Mr. Miller's testimony was forthcoming, honest, and self-assured, and it finds him highly credible. *Kelly v. Kelly*, 445 S.W.3d 685, 695-696 (Tenn. 2014).

Next, the Court finds the machine's safety devices did not function properly. TOSHA confirmed this in its investigation. However, even without the TOSHA report, the Court still concludes the machine's safety devices failed to protect Mr. Kizer based

4

upon Mr. Miller's testimony. Mr. Miller was a maintenance technician knowledgeable in the machine's operation. He examined the machine after the accident and found the "e-stop" was not engaged, leading him to believe that Mr. Kizer lifted the hood with his left hand while reaching his right hand inside the machine. That Mr. Kizer's right hand was inside the machine is obvious, regardless of the precise logistics of Mr. Kizer's actions. Based on his unrebutted testimony, his hand remained inside the machine for some time before the ramming device engaged. There is no serious or substantial doubt that the machine should not have engaged when it did, irrespective of Mr. Kizer's earlier marijuana usage.

Finally, Tennessee authority supports the Court's conclusions. In *Interstate Mech. Contractors v. McIntosh*, 229 S.W.3d 674 (Tenn. 2007), an employee of a DFWP participant tested positive for THC after a machine injured his hand. Like Mr. Kizer, that employee's level of THC vastly exceeded the amount of THC required for a positive result. However, unlike here, expert toxicology proof indicated that employee's reaction time would have been diminished by the level of THC present. Nevertheless, that employee prevailed because the evidence established he could not have reacted quickly enough to avoid injury after activation of the machine regardless of any intoxication. Similarly, in *Campbell v. PML*, No. W2008-01539-WC-R3-WC 2009 Tenn. LEXIS 68 (Tenn. Workers' Comp. Panel May 6, 2009), an employee of a DFWP participant prevailed despite his marijuana use. There, the trial court found the employee's credibility was "imperfect." However, it also noted the absence of evidence showing how THC affected him and further noted the absence of evidence that the employee appeared impaired at the time of the accident. The same findings apply here. Mr. Kizer's testimony also was imperfect, but the only evidence in the record is that he did not appear impaired on the night of injury. Moreover, the expert toxicology proof here does not establish THC caused Mr. Kizer's accident.

Based on these findings, the Court holds that Mr. Kizer rebutted by clear and convincing evidence the statutory presumption that illegal drug use was the proximate cause of his injury.

### Medical Benefits

Dr. Dolan testified the treatment he provided Mr. Kizer was "absolutely" made necessary by the injury. Thus, the Court finds Mr. Kizer is entitled to both payment of his medical bills to date and payment for ongoing treatment of his injury. The Court finds it appropriate to designate Dr. Dolan as the authorized treating physician.

### Temporary Disability Benefits

Dr. Dolan never totally restricted Mr. Kizer from work. Thus, he is not entitled to temporary *total* disability. However, he might be entitled to temporary partial disability

(TPD) which is payable when an employee might resume some gainful employment but has yet to reach maximum medical improvement. *Hackney v. Integrity Staffing Solutions, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (July 22, 2016). Here, Dr. Dolan maintained a restriction of one-handed work since the date of injury, and Mr. Kizer testified he has not worked since. However, Express may enforce its workplace rules even though Mr. Kizer suffered an injury for which temporary benefits would otherwise be payable. *Barrett v. Lithko Contracting*, 2016 TN Wrk Comp App Bd LEXIS 70, at *9 (June 17, 2016).

At this time, the Court does not have evidence Express either attempted or refused to return Mr. Kizer to work or that it terminated him for violation of a workplace rule. Thus, Mr. Kizer has not presented sufficient evidence to show he would likely prevail at a hearing on the merits regarding any entitlement to temporary disability benefits, and the Court denies his request at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Express shall pay Mr. Kizer's medical bills to date and continue to provide medical benefits made reasonably necessary by the injury of October 20, 2016. The Court designates Dr. Dolan as the authorized treating physician.

2. The Court denies Mr. Kizer's request for temporary disability benefits.

3. This matter is set for a Status Hearing on **Tuesday, May 15, 2018, at 10:00 a.m. Central Time. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the Status Hearing.**

**ENTERED this the 9th day of February, 2018.**

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

6

# APPENDIX

Exhibits:

1. Deposition of Dr. Kenneth Ferslew
2. Deposition of Dr. Michael Dolan
3. Deposition of Dr. Mario Figueroa
4. TOSHA Investigative Report
5. Joint Submission of Medical Records
6. Affidavit of Brock Wilson with attached Pinnacle investigative report
7. Wage Statement
8. Drug Test Results
9. Deposition of Jared Kizer

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Joint Pre-Hearing Stipulations of the Parties
5. Express' Pre-Hearing Witness and Exhibit List
6. Express' Pre-Hearing Brief
7. Mr. Kizer's Motion to Continue Expedited Hearing
8. Order Granting Motion to Continue and Resetting Expedited Hearing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 9th day of February, 2018.

| Name | Via Email | Service Sent To: |
|---|---|---|
| Spencer Barnes, Esq., Attorney for Employee | X | spence@morrisonandbarnes.com mbwcparalegal@morrisonandbarnes.com |
| Peter Frech, Esq., Attorney for Employer | X | pfrech@mijs.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov