IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT KNOXVILLE
Assigned on Briefs July 16, 2025

## LELLA YVONNE GRAHAM v. CHI MEMORIAL HEALTHCARE SYSTEM, ET AL.

**Appeal from the Workers' Compensation Appeals Board**
**Court of Workers' Compensation Claims, No. 2021-01-0857**
**Thomas L. Wyatt, Judge**

FILED
NOV 20 2025
Clerk of the Appellate Courts
REc'd By _____

**No. E2024-01928-SC-R3-WC  Mailed September 3, 2025**

_____

This appeal involves an employee's claim for workers' compensation benefits relating to her alleged contraction of the COVID-19 virus at work. The appeal has been referred to the Special Workers' Compensation Appeals Panel for a hearing and a report of findings of fact and conclusions of law pursuant to Tennessee Supreme Court Rule 51. We affirm the judgment of the Appeals Board and adopt its opinion as set forth in the attached Appendix.

**Tenn. Code Ann. § 50-6-217(a)(2)(B) Appeal as of Right;**
**Decision of the Workers' Compensation Appeals Board Affirmed**

W. MARK WARD, J., delivered the opinion of the court, in which DWIGHT E. TARWATER, J. and ROY B. MORGAN, JR., J., joined.

Jimmy W. Bilbo, Cleveland, Tennessee for the Appellant, Lella Yvonne Graham

C. Douglas Dooley & Mickala Lewis, Chattanooga, Tennessee for the Appellee, CHI Memorial Healthcare System

# OPINION

Lella Yvonne Graham worked at a medical facility in Cleveland, Tennessee, operated by CHI Memorial Healthcare System. Graham alleges that she contracted COVID-19 in December 2020 due to regular contact with clinic patients and coworkers infected with the virus. She further alleges that she has suffered a disabling lung injury and other "long COVID" complications because of the illness.

CHI Memorial initially paid temporary disability benefits to Graham for a short period. After conducting an investigation, however, CHI Memorial denied Graham's request for total disability benefits based on its determination that Graham's alleged injuries were not compensable.

CHI Memorial based its position on medical opinions provided by Dr. Michael Czarnecki, a board-certified pulmonologist. Dr. Czarnecki found that Graham had widespread community-risk exposure to COVID-19 and opined that it was not medically possible to conclude that her exposure at work primarily caused her to contract the virus. In other words, Graham could not show that her alleged injuries arose primarily out of and in the course of her employment, as Tennessee Code Annotated section 50-6-102(12) requires.

Relying on Dr. Czarnecki's opinion, CHI Memorial filed a motion for summary judgment. The Court of Workers' Compensation Claims set the motion for a hearing on July 16, 2024.

On July 3, 2024, Graham filed a motion for continuance of the summary judgment hearing. Graham argued that she had retained an expert to provide a medical-causation opinion to support her claims, but that he failed to do so. She argued that she needed more time to obtain a new medical expert. CHI Memorial opposed the requested continuance, arguing that Graham had ample time to obtain medical proof.

The Court of Workers' Compensation Claims denied Graham's motion for a continuance in an order dated July 12, 2024. Graham did not immediately appeal that order. Subsequently, on July 23, 2024, the court granted CHI Memorial's motion for summary judgment and entered judgment in its favor. The court accredited Dr. Czarnecki's opinion that Graham could not establish medical causation and concluded that summary judgment was warranted because Graham

failed to introduce any expert medical proof to support her claim. Graham filed a notice of appeal on August 21, 2024.

A unanimous Appeals Board rejected both issues that Graham presented on appeal. First, the Appeals Board dismissed as untimely Graham's attempt to appeal the trial court's interlocutory order denying her request for continuance of the summary judgment hearing. Second, the Appeals Board affirmed the trial court's summary judgment given Graham's failure to introduce any expert medical causation evidence supporting her claim.

Graham raises the same two issues in this appeal. Upon due consideration, we affirm the judgment of the Appeals Board and adopt its opinion as set forth in the attached Appendix.

## CONCLUSION

The decision of the Workers' Compensation Appeals Board is affirmed. Costs of this appeal are taxed to Lella Yvonne Graham, for which execution may issue.

S: W. Mark Ward
W. MARK WARD, SENIOR JUDGE

## APPENDIX

### (OPINION OF THE WORKERS' COMPENSATION APPEALS BOARD)

### Factual and Procedural Background

Lella Yvonne Graham ("Employee"), a practice manager at CHI Memorial Healthcare System's ("Employer") Cleveland, Tennessee facility, alleges that she contracted COVID-19 in the course of performing her job duties in December 2020.[1]

---

[1] In her petition, Employee asserts she was tested for COVID-19 on December 13, 2020, and was diagnosed on December 14, 2020. Employee then filed an amended PBD on December 14, 2021, asserting a date of injury of December 12, 2020.

Specifically, Employee contends she became sick due to regular contact with coworkers and patients infected with COVID-19 at Employer's facility. Employee filed a Petition for Benefit Determination ("PBD") on December 13, 2021, in which she asserted that she suffered an injury to her lungs due to contracting COVID-19 in mid-December 2020. In the PBD, Employee noted that she reported the incident to Employer on December 13, 2020, and saw a nurse practitioner at CHI Memorial Convenient Care later that same day. In the medical note for that encounter, the nurse practitioner noted that Employee's tests for Flu B and COVID-19 were both positive. Employee was treated conservatively and released. On December 17, 2020, Employee was seen in the emergency department of CHI Memorial Hospital for complaints of shortness of breath, headache, and "[COVID- 19] type symptoms . . . with positive results for [COVID-19]." Employee was admitted and diagnosed with hypoxia and COVID-19. She was discharged on January 2, 2021.

Thereafter, Employee had a telehealth appointment with Madeline Grotefendt, FNP-C, at CHI Memorial Primary Care Associates – Cleveland ("CMPCA-C"). The medical note for that virtual visit states Employee "was admitted to CHI Memorial Hospital with viral pneumonia due to COVID-19, acute respiratory failure with hypoxia, and influenza." The note also indicated that Employee needed post-hospital care, including physical therapy and pulmonary rehabilitation, for which she received a referral. Ms. Grotefendt continued conservative treatment and instructed Employee to follow up in one month. Employee returned on February 8, 2021, with complaints of "significant weakness." Ms. Grotefendt noted that Employee appeared "fatigued" and still required supplemental oxygen therapy.

During her subsequent deposition, Employee recounted that Ms. Grotefendt imposed restrictions limiting how frequently and how long she could work once she was able to return to work in some capacity. The work release signed by Ms. Grotefendt provided Employee could "[r]eturn to work for 4 hours a day on Monday, Wednesday, and Friday beginning on 4-5-21. If able to tolerate this work schedule[,] then [Employee] may work 4 hours daily Monday through Fridays beginning 4/12/21[.]" Employee's condition failed to improve, and she returned to CMPCA-C on eleven subsequent occasions between March 2021 and November 2023. Ultimately, Ms. Grotefendt referred Employee to Dr. Michael T. Czarnecki, a pulmonologist affiliated with Pulmonary & Critical Care Consultants of Chattanooga, for further evaluation.

Dr. Czarnecki performed a medical examination of Employee at Employer's request on April 3, 2023. In the medical report electronically signed on April 4, Dr.

Czarnecki acknowledged that Employee "had a broad community relative risk exposure" to COVID-19 and post COVID-19 complications, but he opined that the correlation of her exposure due to patient care does not necessarily translate to causation of those conditions. He further stated that her "absolute risk is the same as anyone else interacting on a day-to-day basis at work or outside of work." Dr. Czarnacki summed up his opinion by stating that it was not possible to draw a conclusion regarding the connection between Employee's work and her contracting COVID-19 and that, therefore, Employee was not entitled to any permanent impairment as a result of her alleged work exposure to COVID-19.

Additionally, Dr. Czarnecki opined that Employee was at maximum medical improvement but expressed his concern that Employee had not undergone pulmonary function testing, which would be essential to determining the degree of residual pulmonary impairment. Finally, Dr. Czarnecki assessed an anatomical impairment rating of forty percent for "[COVID-19] related organ dysfunction impairment."

The parties deposed Dr. Czarnecki on May 21, 2024. In response to a question from counsel regarding whether it was his opinion that the assessment of a zero-percent impairment "was a result of [Employee's] employment," Dr. Czarnecki stated:

A. That is correct in the first component of causality. It was hard to determine, you know, like I said with the community pulmonary [COVID-19]-related pandemic. There's no way to determine that.

Q. And is that your opinion within a reasonable degree of medical certainty?

A. Yes.

Q. Within the concept of broad community relative risk exposure, is it impossible to determine when or how there was a [COVID-19] exposure and subsequent contraction of [COVID-19]?

A. Well, that's the million dollar question. Yes, it is.

On cross-examination, Dr. Czarnecki was asked if there is "a difference between an impairment rating and [a] disability." Dr. Czarnecki responded in the

affirmative, stating it "depends on what the disability is for and who did the disability. . . . I believe there's a difference between disability and impairment from my perspective. A pulmonary impairment is different from a disability." Finally, counsel for Employee asked Dr. Czarnecki whether "it's more likely than not that [Employee] contracted [COVID-19] at work," to which Dr. Czarnecki responded that making such an assessment required an examination of multiple factors. He further stated:

> [E]ven if you were hermetically sealed, it's nearly impossible to avoid exposure from infectious diseases, right? There's going to be some airborne-related exposure just living in a house even if you never left your house. There has to be – the standard of perfection has to be so high that you just can't – even if you did achieve it, you're still going to have exposure. So[,] I don't think you can make the argument that the only place the exposure occurred in my opinion was at the workplace exclusively. And that's what we documented in there in terms of the work-related exposure is zero percent.

> . . . .

> So[,] I think we would stand by our report where we say a rating of zero percent would be given to [Employee's] employment as contributing to the cause of her injury in our opinion. . . . Even direct patient care does not necessarily imply causation. The absolute risk is the same as anyone else interacting on a day-to-day basis at work or outside of work and, you know, including never leaving the house. So[,] I don't think – you know, I would stand by what I document there.

Employee later filed another PBD in July 2022, which indicated that Employee was released to work on May 3, 2021, and had been assigned an impairment rating of 70% to the body as a whole by Dr. Jeffrey Jump, a general practitioner. In July 2023, a mediator issued a dispute certification notice that certified compensability, medical benefits, and temporary and permanent disability benefits as the issues in dispute. It also identified the "[n]ature and extent of [the] injury" as the defense raised by Employer.

Thereafter, Employer filed four motions with the trial court: (1) a motion for summary judgment; (2) a motion to dismiss Employee's original and amended PBDs, which was later withdrawn; (3) a motion *in limine* to exclude the lay testimony of Employee as it relates to medical causation; and (4) a second motion *in*

*limine* to exclude the Form C-30A completed by Dr. Jump. The trial court heard both motions *in limine* telephonically, and, two days later, entered an order granting Employer's motion to exclude Employee's lay testimony regarding medical causation and "strik[ing] the [Form C-30A] signed by Dr. Jump as inadmissible hearsay."[2] Contemporaneous with its June 26 order resolving Employer's motions *in limine*, the trial court issued an order setting Employer's motion for summary judgment for a telephonic hearing on July 16, 2024.[3] In the interim, Employee filed a motion for a continuance of the summary judgment hearing, which Employer opposed. In that motion, Employee contended her counsel paid the fee for Dr. Jump to complete a Form C-32 in February 2022, but that Dr. Jump did not notify counsel he would not complete the Form C-32 until May 2024. Employee submitted that she had made multiple attempts to find an expert since that time and was unsuccessful, but finally secured an appointment with a pulmonologist on July 11, 2024. Employer opposed that motion on the grounds that the scheduling order had previously been modified and Employee had ample time to obtain her medical proof. The trial court denied the motion for continuance in an order dated July 12, 2024. That order was not appealed.

At the July 16 hearing on Employer's motion for summary judgment, the trial court considered the expert opinion of Dr. Czarnecki and reviewed the medical evidence introduced by Employer. In the compensation order issued on July 23, 2024, the court noted Dr. Czarnecki was board-certified in pulmonology, internal, and critical-care medicine and had examined Employee once to date. In accrediting Dr. Czarnecki's causation opinion finding that Employee's "work in a clinic treating [COVID-19] patients had 'zero percent' causal relationship with her own infection," and given that Employee "offered no expert testimony to dispute this opinion," the trial court determined that Employer had "negated the essential element of [medical] causation" and, thus, was entitled to summary judgment as a matter of law. Continuing further, the court observed that Employee's "sworn statement that she contracted the virus while working in a facility treating patients with [COVID-19] does not, standing alone, place the pulmonologist's opinion in dispute." Accordingly, the trial court entered judgment in favor of Employer and dismissed Employee's claim with prejudice. Employee has appealed.

---

[2] In its order, the trial court stated Employee "did not timely respond to the motions in limine" and "[t]he court file in this case did not contain a response filed by [Employee] at the time of the entry of this order." Further, unlike a Standard Form Medical Report (Form C-32), there is no statute or regulation rendering a Form C-30A admissible at the summary judgment stage.

[3] Defendant's motion did not include a hearing date on the face of it, as required by Tenn. Comp. R. and Regs. 0800-02-21-.18(c).

## Standard of Review

The grant or denial of a motion for summary judgment is a matter of law that we review de novo with no presumption that the trial court's conclusions are correct. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). As such, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* Moreover, a trial court has broad discretion to control the pace of litigation and set hearings to address pre-trial motions. *Valladares v. Transco Products, Inc.*, Nos. 2015-01-0117 & -0118, 2016 TN Wrk. Comp. App. Bd. LEXIS 31, at *26 (Tenn. Workers' Comp. App. Bd. July 27, 2016) ("a trial court has the necessary discretion to control the pace of litigation through the use of case supervision and docket management"); *see also Smith v. Smith*, No. E2017-01295-COA-R3-CV, 2019 Tenn. App. LEXIS 59, at *20 (Tenn. Ct. App. Jan. 31, 2019) ("trial courts have broad discretion to control their dockets"). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2023).

## Analysis

In her notice of appeal, Employee contends the trial court erred in denying her motion for a continuance of the hearing on Employer's motion for summary judgment. In addition, Employee argues that the trial court erred in granting summary judgment under circumstances where Employer failed to file a Notice of Controversy after suspending benefits pursuant to Tennessee Code Annotated section 50-6-205(c)-(d).

### *Employee's Motion for Continuance*

Employee argues it was reversible error to deny her motion to continue since she filed a Rule 72 declaration "providing facts outlining the reasons she could not present an affidavit in opposition" to Employer's medical expert in time. In doing so, she relies on Rule 56.07 of the Tennessee Rules of Civil Procedure, which provides:

> Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court *may* refuse the application for judgment or may order a continuance to permit affidavits to be obtained

or depositions to be taken or discovery to be had or make such other order as is just.

(Emphasis added.) In response, Employer argues the trial court did not abuse its discretion. We conclude, however, that it is unnecessary for us to address the issue because it was not timely appealed. The interlocutory order denying Employee's motion for a continuance was entered on July 12, 2024, and the issue was first raised on appeal in the August 21, 2024 notice of appeal. Employee had seven business days, or until July 23, 2024, to appeal the court's July 12 order, but she did not do so. Thus, we have no jurisdiction to consider this issue. *See* Tenn. Comp. R. & Regs. 0800-02-22-.01(3) (2023); *see also Bates v. Command Ctr., Inc.*, No. 2014-06-0053, 2015 TN Wrk. Comp. App. Bd. LEXIS 10, at *5 (Tenn. Workers' Comp. App. Bd. Apr. 2, 2015) ("Appellate courts treat the untimely filing of a notice of appeal in civil cases as a jurisdictional defect, resulting in a dismissal of the appeal.").

*Summary Judgment*

Next, Employee argues the trial court erred in granting summary judgment under circumstances where Employer failed to file a Notice of Controversy after deciding to suspend benefits as stated in Tennessee Code Annotated section 50-6-205(c)-(d). Thus, she contends the issue before us is whether an employer's purported failure to comply with section 205(c)-(d) "precludes it from now contending that the accident and the resulting injury to the employee were not within the coverage of workers' compensation statutes." Employer asserts the trial court correctly granted its motion because, at the summary judgment stage, "Employee admitted she had no evidence to establish medical causation, despite having over two years to obtain such proof."

In its order, the trial court noted that Employee's Rule 72 declaration did not include any reference to Employer's failure to file notices of denial, controversy, or a change of benefits. The court concluded Employee "presented no sworn evidence of the alleged filing deficiencies," noting she mentioned them "in argument in a response to summary judgment" but did not testify about them in her sworn declaration. The court also noted Employee cited no statutory or case law in support of her argument that Employer's alleged failure to file the required forms precluded Employer from prevailing on its motion for summary judgment.

In her brief on appeal, Employee relies on *Goins v. Kaiser-Roth Hosiery, Inc.*, 751 S.W.2d 423 (Tenn. 1988), a Supreme Court case in which the Court determined the employer's failure to timely file a notice of controversy precluded it from later

contending the accident and injury were not compensable. In *Goins*, the employee slipped and fell on an "oily looking substance" inside the employer's plant while on the way to her workstation before her scheduled shift. *Id.* at 424. The incident was reported immediately and accepted as compensable, and the employer provided both medical and temporary disability benefits. *Id.* In fact, the Supreme Court specifically noted that the "case was accepted by the employer as fully compensable." *Id.* At no point prior to the filing of the complaint did the employer indicate it was reversing its compensability decision or file the appropriate administrative form as described in Tennessee Code Annotated section 50-6-205(d) indicating a controversy in the case or a change or termination of benefits. *Id.* Nevertheless, in an answer filed approximately three months later, the employer challenged compensability, asserting as an affirmative defense that the incident occurred before the employee had begun her shift. *Id.* In rejecting the employer's effort to deny the compensability of the claim and affirming the award of benefits, the Tennessee Supreme Court first noted that the preponderance of the evidence presented during trial supported the court's compensability decision irrespective of the employer's failure to file a notice of controversy. *Id.* Second, the Court noted that the "failure of the employer to show compliance with the statutory requirement [set out in Tennessee Code Annotated section 50-6-205(d)] . . . precludes it from now contending that the accident and the resulting injury to the employer were not within the coverage of the workers' compensation statutes." *Id.*

We conclude Employee's reliance on *Goins* is misplaced. First, although Employer in the present case apparently provided certain benefits as contemplated in the Workers' Compensation Law when the claim was initially reported, Dr. Czarnecki expressed his opinion that Employee's condition could not be traced to her employment within a reasonable degree of medical certainty in April 2023. Moreover, the Dispute Certification Notice issued on July 31, 2023, which was eleven months before Employer filed its motion for summary judgment, listed "compensability" as a disputed issue.[4] Thus, Employee cannot reasonably assert that it was unaware of Employer's compensability defense in a timely manner.

Second, the administrative form that existed when *Goins* was decided, the Notice of Controversy, is no longer in use as of October 2020. Thus, when Employee was diagnosed in December 2020, there was no requirement that an employer file a "notice of controversy" form. Instead, Rule 0800-02-14-.04(8) now requires an

---

[4] As a result of the passage of the 2013 Workers' Compensation Reform Act ("Reform Act"), the Dispute Certification Notice is now used to certify disputed issues to be presented to a trial court for resolution. That document was not in use when *Goins* was decided in 1988.

"adjusting entity" to electronically file a notice of full or partial denial of the claim "within fifteen (15) calendar days of the due date of the first omitted payment." Here, the record is silent regarding when benefits were paid and/or when the "first omitted payment" allegedly occurred. Thus, there is no evidence in this record that Employer failed to electronically file a notice of full or partial denial of the claim within the required time period.

Third, we interpret the Court's holding on this issue in *Goins* as a form of estoppel. Although we acknowledge that the Court did not use that term, it explained its rationale by clarifying that the employer's failure to comply with statutory filing requirements "precluded" it from relying on a compensability defense in circumstances where it had accepted the claim as "fully compensable" even though the facts that later formed the basis of its affirmative defense were apparent from the date of the incident. *Id.* The implication of the Court's rationale was that an employee may detrimentally rely on the employer's acceptance of the claim and, in the particular circumstances presented in *Goins*, the employer should be estopped from later challenging compensability. However, application of an estoppel theory is a fact-intensive determination. *See, e.g., Nicholson v. Wal-Mart Stores, Inc.*, No. M1999-01137-WC-R3-CV, 2001 Tenn. LEXIS 31 (Tenn. Workers' Comp. Panel Jan. 12, 2001) ("If the facts justify it, courts will not hesitate to invoke the doctrine of equitable estoppel . . . . Negligent silence may work an equitable estoppel, and acts or conduct which are calculated to mislead, and do mislead, will work an equitable estoppel even when there is no intention to do so."). Here, as noted above, Dr. Czarnecki expressed his negative causation opinion in April 2023, and the Dispute Certification Notice reflecting Employer's compensability defense was issued in July 2023, well before the filing of the motion for summary judgment. Employee was aware of this defense and took steps to seek expert medical proof to counter that defense but was unable to do so prior to the summary judgment hearing in July 2024.

Finally, we note that several cases decided after *Goins* expressly limited this holding to the specific facts of that case. For example, in *Stapleton v. Mahle, Inc.*, No. 03-S-01-9111-CH-108, 1992 Tenn. LEXIS 453 (Tenn. June 22, 1992), the Supreme Court noted that its previous holding in *Goins* was "later limited to its 'egregious' facts peculiar to that case." *Id.* at *4-5 (citing *Dobbs v. Liberty Mut. Ins. Co.*, 811 S.W.2d 75, 78 (Tenn. 1991)). The Court in *Stapleton* also noted that "there is no language in [section] 50-6-205(d)(1) that can reasonably be read to preclude an employer who has made temporary disability payment in good faith from raising a defense to liability for permanent disability." *Id.* at *5-6. Moreover, Employee has presented no statutory or case law after the passage of the Reform Act that supports

her position. Given the post-reform changes in the language of Tennessee Code Annotated section 50-6-205(c)-(d), the changes in Tenn. Comp. R. and Regs. 0800-02-14-.04(8), the discontinuation of the "Notice of Controversy" form, the case law that expressly limits the holding in *Goins*, and the post-reform use of the Dispute Certification Notice to certify disputed issues, we conclude *Goins* does not dictate the outcome of this case.

Here, Employer presented expert medical proof from Dr. Czarnecki, a pulmonologist, indicating that the alleged workplace exposures could not be identified with any degree of medical certainty as the primary cause of her pulmonary condition. Moreover, in her responses to Employer's statement of undisputed material facts, Employee included the following response to Employer's seventh statement:

> 7. Dr. Czarnecki has examined Employee and opined that Employee's injury did not arise out of the course and scope of her employment with Employer.

> Response: [Employee] agrees this fact is undisputed for purposes of ruling on this summary judgment motion only.

Thus, Employee admitted that Dr. Czarnecki examined her and opined that her injury did not arise primarily out of and in the course and scope of her employment. Although Employee submitted a Form C-30A from Dr. Jump, that document was deemed inadmissible at the summary judgment stage. Further, as the court correctly noted, Employee's sworn statement that she contracted COVID-19 while working does not, standing alone, raise a disputed issue of material fact in light of the pulmonologist's causation opinion. *See Scott v. Integrity Staffing Sols.*, No. 2015-01-0055, 2015 TN Wrk. Comp App. Bd. LEXIS 24, at *11 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015) ("[E]ven under pre-reform law, lay testimony alone was insufficient in most cases to establish adequate evidence of medical causation."). Accordingly, we discern no error by the trial court.

## Conclusion

For the foregoing reasons, we affirm the court's order granting summary judgment and certify it as final. Costs on appeal are taxed to Employee.